UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**HP SANFORD, LLC**,

    Plaintiff,

v

**VILLAGE OF SANFORD**,

    Defendant.

Case No.   22-12175

Hon. _____

| ANDERSON J. GRANDSTAFF (P81331)<br>Attorney for Plaintiff<br>1812 Crestline Drive<br>Troy, MI 48083<br>Anderson.j.grandstaff@gmail.com | |
|---|---|

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### THE PARTIES

1.    Plaintiff, HP Sanford LLC, is a Michigan limited liability company.

2.    Defendant, Village of Sanford ("Defendant"), is a Michigan municipal corporation whose principal place of business is 737 W. Beamish Road, Sanford, MI 48657.

3.    At all relevant times, Defendant acted through its agents, employees, and instrumentalities, including without limitation, the duly elected Village Council.

### JURISDICTION AND VENUE

4.    Under Article III of the Constitution, federal courts can hear "all cases, in law and equity, arising under this Constitution, [and] the laws of the United States..." US Const, Art III, Sec 2.

5. This Court has original jurisdiction over the subject matter of Counts I and II of this action pursuant to 28 U.S.C. § 1331 and 1343, because the matters in controversy arise under the laws of the United States and the United States Constitution.

6. This Court has supplemental jurisdiction over the state law claims set forth in Count III of this action pursuant to 28 U.S.C. § 1367, because that claim is so related to the claims set forth in Counts I and II of this Complaint that they form part of the case and controversy under Article III of the United States Constitution, and because the claims set forth in Counts I and II of this Complaint fall within this Court's original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2), because there is only one Defendant, because that Defendant resides in the State of Michigan, and because a substantial part of the events that gave rise to the Plaintiff's claims took place within the East District of Michigan.

8. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

**GENERAL FACTUAL ALLEGATIONS**

9. In November of 2018, 55% of Michigan electors voted to enact the Michigan Regulation and Taxation of Marihuana Act ("the MRTMA").

10. The MRTMA, which went into effect on December 6, 2018, authorized recreational marihuana establishments within the State of Michigan and set a comprehensive system to license and regulate these establishments.

11. Under the MRTMA, Michigan municipalities are automatically "opted in" to unlimited recreational marihuana establishments unless they choose to enact an ordinance to

"completely prohibit or limit the number of marihuana establishments within its boundaries." MCL 333.27956(1). Municipalities that remain "opted in" (either to unlimited or a set number of recreational marihuana establishments) may establish a licensing system to select who receives a license in the municipality. *See* MCL 333.27956(3).

12. However, the MRTMA further provides that any licensing system implemented by a municipality "may not impose qualifications for licensure that conflict with [the MRTMA] or rules promulgated by the [Michigan department of licensing and regulatory affairs]." MCL 333.27956(3).

13. Pursuant to the MRTMA, if a municipality limits the number of marihuana establishments within its municipal boundaries, "the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with [MRTMA] within the municipality." MCL 333.27959(4).

14. On or around November 8, 2021, Defendant began drafting a recreational marihuana ordinance ("Ordinance No. 43") and an amended zoning ordinance ("Ordinance No. 42") to allow for the operation of marihuana establishments within the Village of Sanford, after a Sanford resident named Sue LaBonville ("LaBonville") encouraged the Sanford Village Council to opt in for marihuana sales during an open meeting held by the Council.

15. After further debating the provisions of Ordinances Nos. 42 and 43 at open meetings held between November 8, 2021 and March 14, 2022, the Council eventually created an application process to award recreational marihuana permits pursuant to Ordinance No. 43 and special zoning permits pursuant to Ordinance No. 42. Under the system created by the Council, applicants needed to obtain both a special zoning permit and a recreational marihuana permit to lawfully operate a marihuana establishment within the Village of Sanford.

16. On March 18, 2022, several weeks prior to the Council's adoption of Ordinances Nos. 42 and 43, LaBonville purchased a residential property located at 2023 N. Meridian Road, Sanford Township, Michigan, for the sum of $165,000.00.

17. On April 6, 2022, the Council voted to adopt both Ordinance No. 42 and Ordinance No. 43.

## ORDINANCE NO. 43

18. Ordinance No. 43 provided that exactly one (1) "MRTMA Marijuana Retailer" could operate within the Village, provided that that applicant first received a Marijuana Establishment Permit from Defendant. **Ex. 1.** Ordinance No. 43, at §3.4.

19. Ordinance No. 43 further provided that, if the number of applications submitted for a Marijuana Establishment Permit exceeded the number of available permits, the Village "will decide among competing applications by a competitive review process intended to select applicants who are best suited to operate in compliance with MRTMA and [Ordinance No. 43] within the Village". *Id.* at §5.5(e). The "Competitive Review Factors" included:

   a. The thoroughness of the application, including the level of detail provided by the applicant and the presence of any deficiencies in the application;

   b. The applicant's history of operating a marijuana business;

   c. The applicant's history of promptly paying taxes or special assessments due to a municipal government;

   d. Whether the applicant had a history of noncompliance with the Council's ordinances or with other local, state, or federal laws;

   e. The sufficiency of the applicant's odor abatement plan; and

   f. The sufficiency of the applicant's security plan.

*Id.* at §5.5(e).

20.     An applicant applying for a Marijuana Establishment Permit was required to comply with applicable state and federal laws, pay a non-refundable application fee of $5,000.00, and to obtain any necessary building, mechanical, plumbing, and electrical permits. *Id.* at §3.6, §3.7.

21.     Ordinance No. 43 also provided that approval of an application for a Marijuana Establishment Permit was "contingent upon the issuance of a Special Use Permit under [Ordinance No. 42]." *Id.* at §3.6.

22.     § 11 of Ordinance No. 43 provided that the provisions of that Ordinance would take effect twenty (20) days following publication or posting after final adoption by the Village Council. *Id.* at §11.

## ORDINANCE NO. 42

23.     The Village's amended zoning ordinance, Ordinance No. 42, authorized a marijuana retailer to operate within the newly created "MJ-1" district of Sanford. The MJ-1 district was an overlay zoning district constituting the following parcels:

  a. Parcel Number: 081-024-400-001-00 commonly known as 2023 N. Meridian Rd.
  b. Parcel Number: 081-024-400-010-00 commonly known as 2033 N. Meridian Rd.
  c. Parcel Number: 081-024-400-050-00 commonly known as 2045 N. Meridian Rd.

**Ex. 2.** Ordinance No. 42, at §11A.3.

24.     Ordinance No. 42 further provided that "no Marijuana Establishment shall be located within one thousand (1,000) feet from any other licensed or permitted Marijuana Establishment". *Id.* at §11A.5.

25.     Because the three land parcels that comprised the newly created "MJ-1" district were located within 1,000 feet of each other, Ordinance No. 42 effectively ensured that only one

Special Land Use Permit would be available for the operation of a marijuana establishment within the Village.

26. Pursuant to Ordinance No. 42, to operate a marihuana establishment within the MJ-1 district, an applicant must first obtain a Special Land Use Permit. *Id.* at §11(A)(3).

27. To apply for a Special Land Use Permit, an applicant must submit a signed and completed application form, an application fee, a form denoting authority to apply for the special land use permit, and seven paper copies and one electronic (PDF) copy of a site plan conforming to Section 14.1.C.2 of the Village of Sanford Zoning Ordinance (the "Zoning Ordinance"). *Id.* at §15(1)(A).

28. Ordinance No. 42 requires that Applicants "hand deliver Applications to the Zoning Administrator or Village Clerk," which can only be received at the Village offices unless otherwise agreed upon. *Id.* at §15(1)(C)(1)-(2). Upon receipt, all applications were to be time stamped and considered in the order in which they are received. *Id.* at §15(1)(C)(3)(1), (4).

29. "Upon receipt of an application for a special land use permit, the Zoning Administrator or Village Clerk shall cause notice to be given of a special land use permit hearing in accordance with the Zoning Enabling Act, as amended." *Id.* at §15(2)(A).

30. Following the public hearing on the special land use permit application, the Planning Commission was required to issue a recommendation to the Council to either approve, approve with conditions, or deny the special use permit application, based upon the Planning Commission's review and consideration of the application, materials submitted with the application, comments received at the public hearing, and other applicable standards of the Village's Zoning Ordinance. *Id.* at §15(2)(E).

31. Ordinance No. 42 expressly prohibited the Planning Commission from hearing more than one special land use application per meeting and further provided that applications submitted first received priority for hearings over latter applicants. *Id.* at §15(2)(B), §15(2)(C).

32. Upon receipt of the recommendation, Ordinance No. 42 directs the Village Council to either approve the application and issue the Special Land Use permit or to reject the application and state the reason for such rejection. *Id.* at §15(2)(F).

33. Ordinance No. 42 took effect seven (7) days following publication of a notice of its adoption by Defendant. *Id.* at §8.

## THE APPLICATION PROCESS

34. On April 9, 2022, notice of Defendant's adoption of Ordinances Nos. 43 and 42 was published in the Midland Daily News. **Ex. 3.** Notice of Adoption.

35. Given this date of publication, Ordinance No. 42 became effective on April 16, 2022, while Ordinance No. 43 became effective on April 29, 2022.

36. On April 16, 2022, LaBonville submitted an application for a Special Use Permit that would allow her to operate a Marijuana Establishment at her recently purchased property located at 2023 N. Meridian Road, pursuant to Ordinance No. 42.

37. On or around May 10, 2022, Plaintiff submitted its own application for a Special Use Permit to operate a Marijuana Establishment at a property located at 2045 N. Meridian Road.

38. In the weeks after it submitted its application for a Special Use Permit, Plaintiff's counsel repeatedly contacted Defendant to request feedback regarding Plaintiff's application and updates regarding the status of that application.

39. After a hearing on May 24, 2022, the Planning Commission referred LaBonville's application to the Council with the recommendation that her application be approved.

40. On June 2, 2022, more than three weeks after Plaintiff submitted its application for a Special Use Permit, counsel for Defendant informed Plaintiff's counsel that Plaintiff's application was incomplete because of Plaintiff's "failure to include an electronic copy of that application pursuant to Zoning Ordinance Section 15.1(A)(I)". Defendant's counsel further indicated that a hearing on Plaintiff's application for a Special Use Permit could not be scheduled until July 12, 2022, ostensibly due to this alleged deficiency. **Ex. 4.** Email from Defendant's Counsel dated June 2, 2022.

41. On June 10, 2022, Plaintiff resubmitted its application for a Special Use Permit and provided an electronic copy of that application.

42. On June 13, 2022, the Council held a public meeting, during which it accepted the recommendation of the Planning Commission and issued a Special Use Permit to LaBonville pursuant to Ordinance No. 42.

43. At that same hearing on June 13, 2022, the Council also decreed that any interested parties had until 7:00 PM on June 17, 2022 to submit an application for a Marijuana Establishment Permit pursuant to Ordinance No. 43. This was an application window of *less than four days*.

44. On June 14, 2022, Defendant's counsel advised Plaintiff's counsel via email of several other alleged deficiencies in Plaintiff's resubmitted application for a Special Use Permit, including Plaintiff's failure to include certain topographical features in its site plan as required by "Section 14.1(C)(2)(a)(2)". **Ex. 5.** Email from Defendant's Counsel dated June 14, 2022.

45. On or around June 28, 2022, Defendant's counsel provided a copy of LaBonville's application for a Special Use Permit to Plaintiff, pursuant to a request submitted under the Michigan Freedom of Information Act.

46. Upon reviewing LaBonville's application, Plaintiff discovered that the Council and the Planning Commission had accepted and approved LaBonville's application for a Special Use Permit even though that application was significantly less detailed than Plaintiff's application, and even though LaBonville's application apparently suffered from many of the same supposed deficiencies Defendant's counsel recounted in his June 14, 2022 email to Plaintiff's counsel.

47. On information and belief, a member of Defendant's Council have verbally indicated that they "intended to give the license to "Sue" (meaning Sue LaBonville) prior to the application window opening.

48. At a meeting held on July 11, 2022, the Council approved LaBonville's application for a Marijuana Establishment Permit.

49. At a hearing held on July 12, 2022, the Planning Commission recommended that Plaintiff's application for a Special Use Permit be denied. In explaining its recommendation, the Planning Commission noted that the location of Plaintiff's proposed facility at 2045 N. Meridian Road was less than 1,000 feet away from the facility of another authorized marijuana retailer, namely, LaBonville's proposed facility at 2023 N. Meridian Road. Several of the Planning Commission's members mentioned that the process was "first come, first serve," and that Plaintiff was not the first applicant to apply for a special land use permit.

50. On August 8, 2022, the Council issued a written resolution denying Plaintiff's application for Special Use Permit pursuant to Ordinance No. 42 for two reasons, to wit:

   a. That a Special Use Permit had already been issued for LaBonville's proposed facility at 2023 N. Meridian Road, and Plaintiff's proposed facility at 2045 N. Meridian Road was located less than 1,000 feet from LaBonville's proposed facility at 2023 N. Meridian Road.
   b. That "the enlarged floor plans submitted [by Plaintiff on] June 10, 2022 and July 12, 2022 do not contain dimensions for either the Waiting & Reception room or the

Show Area and the useable floor area and resulting parking calculations cannot be verified under Section 11A.6 [of Ordinance No. 42]".

**Ex. 6.** Resolution Denying Plaintiff's Application for Special Use Permit.

## COUNT I

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

51. Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

52. The Due Process Clause set forth in the Fourteenth Amendment to the United States Constitution provides that governments shall not "deprive any person of life, liberty, or property, without due process of law."

53. The Due Process Clause offers two separate types of protections: substantive due process and procedural due process.

54. The guarantee of substantive due process "'bar[s] certain government actions regardless of the fairness of the procedures used to implement them[.]'" *Mettler Walloon, LLV v Melrose Twp*, 281 Mich App 184, 197; 761 NW2d 293 (2008). In substantive-due-process disputes over municipal actions, the proper inquiry is whether there was egregious or arbitrary governmental conduct." *Id*.

55. The guarantee of procedural due process requires "notice and an opportunity to be heard" prior to a deprivation of life, liberty, or property, as well as "a decision by an impartial decision-maker[.]" *Bonner v City of Brighton*, 495 Mich 209, 235, 238; 848 NW2d 380 (2014). Before a plaintiff can be deprived of a property interest, they must be afforded due process with procedures that are tailored to the capacities and circumstances of those who are to be heard, and

which ensure that the plaintiff is given a meaningful opportunity to present their case. *Id.* at 238-239.

56. The permit application process established by the Council was designed to ensure that only a single applicant would be capable of obtaining a Special Use Permit and a Marijuana Establishment Permit and was implemented in a manner which ensured that only LaBonville's application would be successful.

57. Examples of inappropriate and biased actions taken by the Council to favor LaBonville's application include, but are not limited to:

a. Prior to the enactment of Ordinances Nos. 42 and 43, LaBonville obtained, or was given, information regarding the boundaries of the proposed "MJ-1" district. This information allowed LaBonville to purchase one of the three (3) properties capable of operating as a Marijuana Establishment, and to do so several weeks before Ordinance No. 42 became effective on April 16, 2022. This in turn ensured that LaBonville would be the only applicant who was immediately prepared to submit an application on April 16, 2022.

b. Defendant gave LaBonville access to application forms that were not provided to other applicants or made readily available to the public. This access made it more likely that LaBonville's application would be approved, and it also provided a spurious pretext for Defendant to impede the progress of Plaintiff's application until after LaBonville's application had already been approved.

c. Defendant drafted Ordinance No. 42 in a manner which provided that the Planning Commission would only hold one hearing regarding a Special Use Permit every two months and that applications would be scheduled for hearings in the order in which they were submitted. Given LaBonville's insider knowledge regarding the MJ-1 District and her access to application forms, this provision ensured that LaBonville's application would have a two-month "head start" over other applicants.

d. Defendant implemented a biased system for reviewing applications for Special Use Permits under Ordinance No. 42, which subjected applicants to disparate treatment without any rational basis related to the merits of their application. Under this system, Defendant quickly approved

    LaBonville's application for a Special Use Permit, even though LaBonville's application failed to conform with the requirements of Ordinance No. 42 in several respects. In contrast, Defendant ignored Plaintiff's application for a Special Use Permit for several weeks and only considered it after LaBonville's application for the same had already been approved. Defendant then used Plaintiff's lack of access to the aforementioned application forms as a pretext to find minor flaws in Plaintiff's application, even though many of these flaws were equally applicable to LaBonville's application. Upon information and belief, Defendant's goal in employing these tactics was to further delay scheduling a hearing with the Planning Commission on Plaintiff's application for a Special Use Permit until after LaBonville's application for a Marijuana Establishment Permit under Ordinance No. 43 was approved, at which point the Planning Commission would simply deny Plaintiff's application for the pretextual reason that Plaintiff's proposed facility was located too close to LaBonville's proposed facility.

e. At the same meeting that it approved LaBonville's application for a Special Use Permit on June 13, 2022, Defendant also decided to open the application window for a Marijuana Establishment Permit under Ordinance No. 43 for a period of only four (4) days. Because this announcement was made before the Planning Commission had even held a hearing on Plaintiff's application, and because the terms of Ordinance No. 43 made approval of a Marijuana Establishment Permit conditional upon the applicant obtaining a Special Use Permit under Ordinance No. 42, Defendant's unusually limited application window effectively ensured that LaBonville was the only applicant capable of submitting an application for a Marijuana Establishment Permit under Ordinance No. 43.

f. After LaBonville's application for a Marijuana Establishment Permit was approved on July 11, 2022, Defendant used this approval as a basis to deny Plaintiff's applications for a Special Use Permit and a Marijuana Establishment Permit. Defendant's decision to deny Plaintiff's applications on this basis demonstrates that those denials had nothing to do with whether Plaintiff's applications met the criteria set forth in Ordinances Nos. 42 and 43, or with the relative merits of Plaintiff's applications compared to LaBonville's applications. Instead, Defendant was simply imposing arbitrary timing restrictions to ensure that only LaBonville's application could succeed.

58. The aforementioned actions taken by Defendant were arbitrary, capricious, and inconsistent with Ordinance No. 43's stated purpose of "select[ing] applicants who are best suited to operate in compliance with MRTMA and [Ordinance No. 43] within the Village [of Sanford]. These actions deprived Plaintiff of its right to substantive due process in a manner that was so egregious as to shock the conscience.

59. The aforementioned actions taken by Defendant also deprived Plaintiff of its right to procedural due process by subjecting Plaintiff to deficient administrative procedures which failed to provide Plaintiff with a reasonable opportunity to present its case, and which were overseen by governmental decision-makers who clearly favored another applicant.

60. Plaintiff has incurred significant damages as a direct result of the Council's violations of its rights under the Due Process Clause, including, but not limited to, financial costs incurred in drafting and modifying a site plan for use in its application for a Special Use Permit under Ordinance No. 42.

## COUNT II

### "CLASS-OF-ONE" CLAIM PURSUANT TO THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

61. Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

62. The Equal Protections Clause set forth in the Fourteenth Amendment to the United States Constitution provides that governments shall not "deny to any person within its jurisdiction the equal protection of the laws".

63. In addition to affording protections against governmental discrimination on the basis of race and other immutable characteristics, the Equal Protection Clause also protects people from so-called "class-of-one" discrimination, in which a government arbitrarily and irrationally

singles out one person for poor treatment or arbitrary abuse. *See Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012).

64. Class-of-one discrimination "is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive ... comes down hard on a hapless private citizen.'" *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013), *quoting Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005) (alteration in original).

65. Pursuant to the United States Supreme Court's holding in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), a plaintiff asserting a class-of-one discrimination claim must show (1) that the plaintiff was intentionally treated worse than similarly situated comparators, and (2) that there was no rational basis for the different treatment.

66. As detailed above, the Sanford Village Council and the Planning Commission were both state actors, and they decided to grant a Special Use Permit and a Marijuana Establishment Permit to LaBonville, but declined to issue either of those two permits to Plaintiff.

67. LaBonville was a similarly situated comparator to Plaintiff for all purposes relevant to their respective applications for a Special Use Permit under Ordinance No. 42 and for a Marijuana Establishment Permit pursuant to Ordinance No. 43.

68. By denying Plaintiff's application for a Special Use Permit under Ordinance No. 42, and Plaintiff's application for a Marijuana Establishment Permit pursuant to Ordinance No. 43, the Council intentionally treated Plaintiff in a manner which was different to, and worse than, the blatant favoritism the Council showed to LaBonville and her applications.

69. There was no rational basis for the Council's disparate treatment of the applications submitted by Plaintiff and LaBonville and, upon information and belief, the Council's decision to deny Plaintiff's applications were the product of either an irrational personal preference for

LaBonville's application or of personal relationships between LaBonville and members of the Planning Commission and/or the Sanford Village Council.

70. Plaintiff has incurred significant damages as a direct result of the Council's violations of its rights under the Equal Protection Clause, including, but not limited to, financial costs incurred in drafting and modifying a site plan for use in its application for a Special Use Permit under Ordinance No. 42.

## COUNT III

### VIOLATION OF THE MICHIGAN REGULATION AND TAXATION OF MARIHUANA ACT, MCL 333.27951 ET SEQ.

71. Plaintiff hereby incorporates by reference all previous paragraphs as if fully set forth herein.

72. The MRTMA provides that a Michigan municipality "may adopt other ordinances that are not unreasonably impracticable and do not conflict with [the MRTMA] or with any rule promulgated pursuant to [the MRTMA] and that...regulate the time, place, and manner of operation of marihuana establishments." MCL 333.27956(2).

73. The MRTMA further provides that a Michigan municipality may also "adopt an ordinance requiring a marihuana establishment with a physical location within the municipality to obtain a municipal license, but may not impose qualifications for licensure that conflict with this act or rules promulgated by the department". MCL 333.27956(3).

74. Pursuant to MCL 333.27959(4), if a municipality limits the number of marihuana establishments within its municipal boundaries, "the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with [the MRTMA] within the municipality."

75. Because Defendant chose to limit the number of marihuana establishments operating within its municipal boundaries to one (1) marijuana retailer establishment, Defendant was obligated to implement a competitive application review process which was intended to select the applicant best suited to operate that establishment in compliance with the MRTMA.

76. As detailed in Paragraph 57 and its subparts, Defendant violated MCL 333.27956 and MCL 333.27959 by designing an application process which was not intended to be competitive or to select the most qualified applicant, and by implementing that application process in a manner which ensured that only LaBonville's application could succeed.

77. Defendant's violations of the MRTMA were willful and lacked any justification or excuse, and the application process implemented by Defendant was arbitrary and capricious.

78. As a direct result of Defendant's violations of the MRTMA, Plaintiff has incurred significant damages, including, but not limited to financial costs incurred in drafting and modifying a site plan for use in its application for a Special Use Permit under Ordinance No. 42.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant, and award the following relief:

A. Declare that the application process designed and implemented by Defendant violated Plaintiff's rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution;

B. Declare that the application process designed and implemented by Defendant violated the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 et seq.;

C. Preliminarily and permanently enjoin Defendant from awarding to LaBonville a Special Use Permit under Ordinance No. 42 or a Marijuana Establishment Permit under Ordinance No. 43, pursuant to Rule 65 of the Federal Rules of Civil Procedure;

D. Awarding Plaintiff costs, expenses, and reasonable attorneys' fees incurred in bringing this action; and

E. Granting such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: September 13, 2022

By: /s/ *Anderson Grandstaff*
Anderson Grandstaff (P81331)
Attorney for Plaintiff
1812 Crestline Dr
Troy, MI 48083
(231) 838-7917 (telephone)
Anderson.j.grandstaff@gmail.com