**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

**HP SANFORD, LLC**,

      Plaintiff,                    Case No.   2:22−cv−12175−LVP−CI

v                                  Hon. Linda V. Parker

**VILLAGE OF SANFORD**,

      Defendant.

| | |
|---|---|
| ANDERSON J. GRANDSTAFF<br>Attorney for Plaintiff<br>1812 Crestline Drive<br>Troy, MI 48083<br>Anderson.j.grandstaff@gmail.com | |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, HP Sanford, LLC ("Plaintiff"), hereby moves for a preliminary injunction as set out below and for the reasons set forth in the accompanying Memorandum. Fed. R. Civ. P. 65(a).

As set out more fully in the accompanying Memorandum, this action arises from an application process implemented by Defendant, the Village of Sanford, for the purpose of awarding the Special Use Zoning permits and Marihuana Establishment permits necessary to lawfully operate a recreational marijuana retailer establishment in compliance with local ordinances passed by Defendant's City Council. Plaintiff asserts that this application process was designed in an arbitrary and capricious manner by Defendant's City Council to ensure that the first applicant who submitted applications would receive both permits, and this process was implemented in an egregiously biased manner that ensured that only the application submitted by

the Council's favored applicant, Sue LaBonville ("LaBonville"), would receive any meaningful consideration.

The biased and pretextual application process designed and implemented by Defendant's City Council violated Plaintiff's rights to due process of law and equal protection of the law under the Fourteenth Amendment to the United States Constitution by subjecting Plaintiff to the decision of a biased governmental decision-maker, and by ensuring that Plaintiff was not given any meaningful opportunity to be heard. Defendant's actions also violated the Michigan Regulation and Taxation of Marihuana Act ("the MRTMA"), which mandates that municipalities which limit the number of available marihuana licenses must "decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with [the MRTMA] within the municipality." MCL 333.27959(4). Various actions taken by Defendant, including its decision to give insurmountable preference to the earliest submitted applications, to accept LaBonville's application prior to the Application Window, and to approve LaBonville's application without first considering any other applications, demonstrate that Defendant's application process was not competitive and did nothing to promote the selection of the applicants which were best suited to operate in compliance with the MRTMA.

With this motion, Plaintiff is requesting a preliminary injunction enjoining Defendant from awarding a Special Use Zoning permit and a Marihuana Establishment permit to LaBonville and further enjoining Defendant from certifying to the Michigan Marihuana Regulatory Agency that LaBonville has complied with its municipal marihuana ordinances. Plaintiff submits that it meets the standards for a preliminary injunction. As detailed in the accompanying Memorandum, Plaintiff has probable success on the merits, Plaintiff will be irreparably harmed unless the Court imposes the requested injunction, Defendant and others will not be substantially harmed by the

imposition of that injunction, the public interest will be served by the injunction, and there is no adequate remedy at law.

Because the requested preliminary injunction presents no monetary risks to Defendant, Plaintiff requests that bond be set at $1. Fed. R. Civ. P. 65(c).

Pursuant to Local Rule 7.1(a), counsel for Plaintiff contacted counsel for Defendant via email to request the latter's concurrence with the relief sought by this Motion. Defendant did not concur with the relief sought by this Motion.

For the reasons stated in the accompanying Memorandum, Plaintiff prays that the Court grant this motion and preliminarily enjoin Defendant from enforcing the challenged provisions as applied until a final hearing on the merits.

Respectfully Submitted,

Dated:  November 1, 2022

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein via E-service on November 1, 2022.

Signature:/s/ Anderson Grandstaff
Anderson Grandstaff

/s/ *Anderson Grandstaff*
By:_____
Anderson Grandstaff (P81331)
Attorney for Plaintiff
1812 Crestline Dr
Troy, MI 48083
(231) 838-7917 (telephone)
Anderson.j.grandstaff@gmail.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**HP SANFORD, LLC**,

     Plaintiff,                   Case No.   2:22−cv−12175−LVP−CI

v                                    Hon. Linda V. Parker

**VILLAGE OF SANFORD**,

     Defendant.

| | |
|---|---|
| ANDERSON J. GRANDSTAFF<br>Attorney for Plaintiff<br>1812 Crestline Drive<br>Troy, MI 48083<br>Anderson.j.grandstaff@gmail.com | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

_____

Respectfully Submitted,


/s/ *Anderson Grandstaff*

By:_____

     Anderson Grandstaff (P81331)
     Attorney for Plaintiff
     1812 Crestline Dr
     Troy, MI 48083
     (231) 838-7917 (telephone)
     Anderson.j.grandstaff@gmail.com

Dated:  November 1, 2022

i

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................. iii

Introduction ..............................................................................................................1

Facts ........................................................................................................................1

Argument .................................................................................................................8

**I.  Plaintiff Has a Substantial Likelihood of Success on the Merits**...............….......8

    A.  Defendant Violated Plaintiff's Rights Under the Due Process Clause ............8

    B.  Defendant Violated Plaintiff's Rights Under the Equal Protection Clause....13

    C.  Defendant's Application Process Was Not Designed to Select the Most Qualified Applicant and Was Not Competitive ............................20

**II.  Plaintiff Will Suffer Irreparable Injury Without the Requested Injunction** .......22

**III. The Balance of Equities Weighs In Plaintiff's Favor, Because the Requested Injunction Will Not Substantially Injure Others** ................................22

**IV. The Requested Injunction Furthers the Public Interest** ........................................23

Conclusion…………………………………………………………………………..25

# Table of Authorities

*Cases*

*Board of Regents v Roth*, 408 U.S. 564, 571; 92 S Ct 2701 (1972) ……………9
*Bonner v. City of Brighton,* 495 Mich. 209; 848 N.W.2d 380, 391 (2014) …….9-10
*Daniels v. Williams*, 474 U.S. 327, 331; 106 S.Ct. 662 (1986) …..…..…..…….9-10
*Dow v. Michigan*, 396 Mich. 192, 204; 240 N.W.2d 450 (1976) ……………..9
*F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412 (1920) ……………………14
*Geinosky v City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) ……………14
*Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)…..…………………14
*Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61 (1911) …………………..14
*Logan v. Zimmerman Brush Co.*, 455 U.S. 422; 102 S. Ct. 1148 (1982). ……...9
*Mettler Walloon, LLV v Melrose Twp*, 281 Mich App 184, 197;
761 NW2d 293 (2008) ……………………………………………………10
*Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013)………………14
*Village of Willowbrook v Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000)…...14
*Winter v Natural Resources Defense Council*, 555 U.S. 7,
129 S. Ct. 365 (2008). ……………………………………………………..8

*Statutes, Rules, and Constitutional Provisions*

Michigan Freedom of Information Act, MCL 15.231 *et seq.* ……………………7
Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 et seq….1
          MCL 333.27952…………………………………………………24
          MCL 333.27956…………………………………………………1, 21
          MCL 333.27959 ……………………………………8, 10, 16, 20, 21

Fed. R. Civ. P. 65………………………………………………………8

U.S. Const. amend. XIV, §1……………………………………………9, 13

## Introduction

This action concerns the application processes implemented by Defendant, the Village of Sanford ("Defendant"), for awarding Special Use Zoning Permits ("SUP") and Marihuana Establishment permits ("MEP"). **Ex. 1. Complaint.** Plaintiff, HP Sanford LLC ("Plaintiff"), maintains that Defendant designed these processes to ensure that Sue LaBonville ("LaBonville"), an applicant favored by its City Council ("the Council"), received the permits necessary to operate a recreational marihuana retail establishment, and that Defendant's employees refused to consider any other applications. Plaintiff is requesting that the Court issue a preliminary injunction enjoining Defendant from awarding an SUP and an MEP to LaBonville and from certifying LaBonville's compliance with its municipal marihuana ordinances to the Michigan Marihuana Regulatory Agency ("the MMRA") until this action is resolved. This relief is appropriate, as Plaintiff can establish all the requisite elements for such an injunction.

## Facts

In November of 2018, Michigan electors voted to enact the Michigan Regulation and Taxation of Marihuana Act ("the MRTMA"), which authorized recreational marihuana establishments within the State of Michigan and set a comprehensive system to license and regulate these establishments. MCL 333.27951 et seq. Per the MRTMA, municipalities are automatically "opted in" to unlimited recreational marihuana establishments unless they enact an ordinance to prohibit or limit the number of marihuana establishments within their boundaries. MCL 333.27956(1). Defendant is a municipality that declined to "opt in". Prior to 2022, its municipal ordinances prohibited the operation of any marihuana establishments.

1

In late 2021, LaBonville, a resident of Sanford, encouraged the Council to opt in for marihuana sales. On or around November 8, 2021, the Council began drafting an amended zoning ordinance ("Ordinance No. 42") and a recreational marihuana ordinance ("Ordinance No. 43"), which would allow for the operation of a marihuana establishment within Sanford.

On March 1, 2022, LaBonville gave an interview to the Midland Daily News, in which she discussed her business acumen, her community activism, her support for the proposed Ordinances, and her desire to open a marihuana retailer. LaBonville also expressed concern regarding whether her applications could succeed if Defendant implemented a competitive application process. **Ex. 2. Midland Daily News Article, March 1, 2022.**

On March 14, 2022, the Council announced that it would enact the proposed Ordinances at a public hearing held on April 6. On March 18, prior to the adoption of Ordinances Nos. 42 and 43. LaBonville purchased a property located at 2023 N. Meridian Road. On April 6, the Council voted to adopt Ordinances Nos. 42 and 43. Notice of its adoption published in the Midland Daily News on April 9. **Ex. 3. Notice of Publication.**

### *Ordinance No. 42*

Under Defendant's application system, applicants needed to obtain both an SUP under Ordinance No. 42 and an MEP under Ordinance No. 43 to operate a marihuana establishment within the Village of Sanford. **Ex. 4. Ordinance No. 42**, at §11(A)(3); **Ex. 5. Ordinance No. 43,** at §3.6. Ordinance No. 42 took effect on April 16, 2022, seven (7) days after publication of the notice of its adoption by Defendant. Ex. 4, at §8. It created an "MJ-1" overlay zoning district that encompassed the three land parcels located at 2023, 2033, and 2045 N. Meridian Road. *Id.* at§11(A)(3). Ordinance No. 42 also provided that "no Marijuana Establishment shall be located within one thousand (1,000) feet from any other licensed or

permitted Marijuana Establishment". *Id.* at §11A.5. Because the three land parcels of the MJ-1 district are located within 1,000 feet of each other, this effectively ensured that only one SUP could be issued for the operation of a marihuana establishment in Sanford.

Under Ordinance No. 42, applicants were required submit a signed and completed application form, an application fee, a form denoting authority to apply for the special land use permit, and seven paper copies and one electronic (PDF) copy of a site plan conforming to §14(1)(C)(2) of Sanford's Zoning Ordinance (the "Zoning Ordinance"). *Id.* at §15(1)(A). Applicants were required to "hand deliver [their] Applications to the Zoning Administrator or Village Clerk," and Ordinance No. 42 provided that those applications could only be received at Defendant's village offices, unless otherwise agreed upon. *Id.* at §15(1)(C)(1)-(2). Upon receipt, all applications were to be time stamped and then considered in the order in which they were received. *Id.* at §15(1)(C)(3)(1), (4). Defendant would then schedule a hearing of the Zoning Planning Commission ("the Commission"). *Id.* at §15(2)(A). Following this hearing, the Commission would issue a recommendation to the Council to either approve, approve with conditions, or deny the special use permit application. *Id.* at §15(2)(E). Ordinance No. 42 prohibited the Commission from hearing more than one SUP application per meeting and mandated that applicants who submitted their application first would receive priority for hearings over later applicants. *Id.* at §15(2)(B), §15(2)(C).

### Ordinance No. 43

Ordinance No. 43 became effective on April 29, 2022, 20 days following publication of its adoption on April 9. Ex. 5, at §11. An applicant applying for an MEP under Ordinance No. 43 was required to comply with applicable state and federal laws, pay a $5,000 non-refundable application fee, and obtain any necessary building permits. *Id.* at §3.6, §3.7. 21.

Notably, Ordinance No. 43 provided that exactly one (1) "MRTMA Marijuana Retailer" could operate in Sanford and that, if the number of applications submitted for an MEP was greater than the single available permit, Defendant would "decide among competing applications by a competitive review process intended to select applicants who are best suited to operate in compliance with MRTMA and [Ordinance No. 43]". *Id.* at §3.4 and §5.5(e). These "Competitive Review Factors" included the thoroughness of the application, the applicant's history of operating a marihuana business and of promptly paying taxes, and the sufficiency of the applicant's odor abatement and security plans. *Id.* at §5.5(e).

### *LaBonville's Application*

LaBonville purportedly submitted her SUP application to Defendant on April 16, 2022, the same day that Ordinance No. 42 took effect. **Ex. 6. Two Versions of LaBonville's Application for Special Use Permit**. Two different versions of the digital file for LaBonville's application exist; the first is titled "Signed MJ SUP app 4.16.22", while the second is titled "2022.04.18 Marijuana retail SUP". The only significant difference between the versions is in the section for "Application Date", located in the upper right of the document. This section was blank in the first version. However, within the second version, that section indicates that LaBonville's application was received by Mr. Brett Spangler, Defendant's Building Inspector (but not its City Clerk or Zoning Administrator) at approximately 9:30 AM on April 16, 2022. *Id.* Contrary to Ordinance No. 42, it seems that Defendant never time-stamped the first version of the application. Ex. 4, at §15(1)(C)(3)(1).

There is significant evidence indicating that LaBonville submitted her application *before* Ordinance No. 42 took effect. To begin with, April 16 falls on a *Saturday*. Upon information and belief, Defendant's offices are not open to the public on weekends, and this

4

suggests LaBonville could not possibly have hand-delivered her application on that date in compliance with Ordinance No. 42. Also, the second version of the digital file for LaBonville's application, which was the only version to be timestamped, listed the date of *April 18, 2022* in its name, suggesting that she may not have submitted the application until that date. It is also potentially significant that LaBonville's signature was the only part of the SUP application completed in her handwriting because the date inserted next to that signature could have been added electronically later. Some attachments to LaBonville's application, including her proposed Site Plans, also appear to list the date of her application as April 1<u>5</u>, 2022. Lastly, the existence of two distinct digital versions of LaBonville's application is also problematic. Had LaBonville actually submitted her application on April 16, it would make very little sense for Defendant's employees to scan that application without timestamping it, only to later timestamp the application, rescan it, and save it as a different digital file with a name that includes April 18, 2022.

### *The Application Review Process*

On May 10, 2022, Plaintiff submitted its own application for an SUP for a property located at 2045 N. Meridian Road. **Ex. 7. Plaintiff's SUP Application.** Plaintiff's employee then contacted Defendant's attorney via email and expressed his concern that, because the Commission could only hold a hearing regarding an SUP every two months, the application window for Plaintiff to apply for a MEP could open and close before Plaintiff's SUP application was considered. Plaintiff's employee also asserted that the decision to limit the Commission's hearings was inconsistent with the MRTMA requirement for a "competitive" application process. In response, Defendant's attorney indicated that "[Defendant] will

follow its process, which includes competitive review *if needed*". (emphasis added). **Ex. 8. Email Correspondence from May 2022.**

In the weeks following this exchange, Plaintiff and its attorney repeatedly contacted Defendant's attorney to request feedback and updates regarding the status of Plaintiff's application. *Id.* On May 19, 2022, Defendant's attorney responded by stating that Plaintiff's application "may be on [his] desk" and that he would follow up regarding the status of Plaintiff's application in the near future. *Id.* Thus, Defendant took no steps to review Plaintiff's application between May 10 and May 19. Despite making this promise and receiving additional emails, Defendant's attorney did not reach out again until June 2. On that date, more than three weeks after Plaintiff submitted its SUP application, Defendant's counsel informed Plaintiff that its application was incomplete because of its "failure to include an electronic copy of that application pursuant to Zoning Ordinance §15.1(A)(I)". Defendant's counsel further indicated that a hearing with the Commission regarding Plaintiff's SUP application would not be scheduled until July 12. **Ex. 9. Email from Defendant's Counsel dated June 2, 2022**. Plaintiff resubmitted a digital copy on June 10.

While Plaintiff was struggling to speak with Defendant's attorney regarding its SUP application, LaBonville's SUP application proceeded with alacrity. At a hearing held on May 24, 2022, the Commission referred LaBonville's SUP application to the Council with a recommendation that it be approved. On June 13, the Council held a public meeting, during which it issued an SUP to LaBonville. The Council also decreed that applicants had until June 17 to submit their MEP application; an application window of *less than four days*.

On June 14, 2022, Defendant's counsel advised Plaintiff's counsel via email of several other alleged deficiencies in Plaintiff's resubmitted SUP application, such as its

alleged failure to include certain topographical features in its site plan as required by "§14.1(C)(2)(a)(2)". **Ex. 10. Email from Defendant's Counsel dated June 14, 2022**. On or around June 28, 2022, Defendant's counsel provided a copy of LaBonville's SUP application to Plaintiff, pursuant to a request submitted under the Michigan Freedom of Information Act, MCL 15.231 *et seq*. Upon reviewing this application, Plaintiff discovered that LaBonville's application was significantly less detailed than Plaintiff's application and that it suffered from many of the same supposed deficiencies Defendant's attorney listed in his June 14 email to Plaintiff's counsel. Ex. 6.

On July 11, 2022, the Council approved LaBonville's MEP application. According to an article published in the Midland Daily News, the Council's approval of LaBonville's application was subject to "contingencies regarding sales tax and alerting the village to the growers [the proposed] business was working with". Per the article, LaBonville was "working with architects to design the two-and-a-half-acre property that would house a 1,000-square-foot [sic] building". The article also noted that the Council "vowed to allow only one marijuana business". **Ex. 11. Midland Daily News Article dated July 11, 2022**.

At a hearing on July 12, 2022, the Commission recommended denial of Plaintiff's SUP application. The basis for this decision was that Plaintiff's proposed facility was located less than 1,000 feet away from an authorized marihuana retailer, namely, LaBonville's proposed facility. Plaintiff will establish via witness testimony that Commission members considered the SUP application to be a "first come, first serve" process and that they said that Plaintiff's application should be denied because LaBonville's was submitted first.

On August 8, 2022, the Council issued a written resolution denying Plaintiff's SUP application. The Council offered two bases for its decision, namely: (1) because an SUP had

already been issued for LaBonville's proposed facility, and Plaintiff's proposed facility was located less than 1,000 feet from LaBonville's proposed facility; and (2) because the floor plans submitted by Plaintiff did not contain dimensions "for either the Waiting & Reception room or the Show Area and the useable floor area and resulting parking calculations cannot be verified under §11A.6 [of Ordinance No. 42]". **Ex. 12. Resolution Denying Plaintiff's SUP Application.** Notably, LaBonville did not list the dimensions for the Waiting/Reception room or the Show Area of her facility in her SUP application.

**Argument**

Before LaBonville can begin operating her marihuana establishment, she first needs to construct proposed facility and apply for a state license from the MMRA. Per the MRTMA, the MMRA can only approve LaBonville's state license application if Defendant certifies that she has complied with the applicable municipal marihuana ordinances. MCL 333.27959(3)(b). With this Motion, Plaintiff is requesting a preliminary injunction enjoining Defendant from awarding an SUP and MEP to LaBonville or from certifying her compliance with municipal ordinances to the MMRA. A plaintiff seeking a preliminary injunction pursuant to Fed. R. Civ. P. 65 must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v Natural Resources Defense Council*, 555 U.S. 7 (2008). Injunctive relief should be granted because Plaintiff can establish these elements.

I. PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

A. **Defendant Violated Plaintiff's Rights Under the Due Process Clause**

The Due Process Clause provides that governments shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. The U.S. Supreme Court has held that, as they appear in this clause, the words "[l]iberty" and "property" are broad and majestic terms. *Board of Regents v Roth*, 408 U.S. 564, 571; 92 S Ct 2701 (1972). Although a property right may be less than a formal contractual right, it must be based on more than a mere unilateral expectation. *Roth*, supra, at 577. The hallmark of a property interest "is an individual entitlement grounded in state law, which cannot be removed except 'for cause'". *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982).

Here, Defendant violated Plaintiff's property interest by interfering with its efforts to develop its property into a marihuana establishment. Michigan Courts have long recognized that property owners such as Plaintiff have a significant interest in their property within the meaning of the Due Process Clause. *See Bonner v. City of Brighton,* 495 Mich. 209; 848 N.W.2d 380, 391 (2014) ("Explicit in our state and federal caselaw is the recognition that an individual's vested interest in the use and possession of real estate is a property interest protected by due process"), *quoting Dow v. Michigan*, 396 Mich. 192, 204, 240 N.W.2d 450 (1976), *Roth*, *supra* 408 U.S. at 571–572. Moreover, as discussed below, Michigan state law and Defendant's local Ordinances also provide that applicants seeking permits to operate a marihuana establishment are entitled to a "competitive process".

The Due Process Clause provides substantive and procedural due process protections. Substantive due process "protects against the arbitrary exercise of governmental power" and asks the question of whether the government's deprivation of a person's life, liberty or property is justified by a sufficient purpose. *See Bonner, supra,* at 209, *quoting Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (holding that the

guarantee of substantive due process prevents governmental power from being oppressively exercised). Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them[.]" *Mettler Walloon, LLV v Melrose Twp*, 281 Mich App 184, 197; 761 NW2d 293 (2008). In substantive due process disputes over municipal actions, the proper inquiry is whether there was egregious or arbitrary governmental conduct." *Id.* at 192. Procedural due process requires "notice and an opportunity to be heard" prior to a deprivation of life, liberty, or property, as well as "a decision by an impartial decision-maker[.]" *Bonner, supra,* at 235, 238. Before a plaintiff can be deprived of a property interest, they must be afforded due process with procedures tailored to the circumstances of those who are to be heard, which ensure that they are given a meaningful opportunity to be heard. *Id.* at 238-239.

Defendant clearly violated Plaintiff's rights to substantive due process. Defendant designed its application processes to ensure that only one establishment could operate in Sanford, to give an insurmountable advantage to the first applicant to submit a "complete" application, and to give the Council control over the determination of whether an application was "complete". These actions amount to an oppressive exercise of governmental authority, as Defendant clearly favored one applicant at the expense of any other. Defendant's conduct was also arbitrary and capricious, because its application process ensured that the first applicant who submitted an application favored by the Council would be approved. This was inconsistent with the criteria set forth in MCL 333.27959(4) and in Defendant's Ordinances, which mandate an application process designed to select the applicant who is most qualified to operate their proposed marihuana establishment with the MRTMA.

Even if we assume, *arguendo*, that Defendant did not intentionally design its application process to favor LaBonville's application, then its biased implementation was arbitrary and capricious. LaBonville was apparently allowed to submit her SUP application *before* the application window opened. Once accepted, her application was immediately scheduled for a hearing before the Commission, where it was quickly approved. In contrast, Defendant did not even acknowledge Plaintiff's application until over 3 weeks after it was submitted. At that point, Defendant refused to consider Plaintiff's application, ostensibly because no digital copy was submitted. Even if we accept that Defendant's attorney did not engage in deliberate delay by taking several weeks to make this simple determination, we must acknowledge that Defendant did nothing to rectify this delay when it refused to schedule Plaintiff's application for a hearing with the Commission before July 12.

This delay gave the Council the time to accept the Commission's recommendation regarding LaBonville's SUP application and to open the MEP application window. This MEP application window merits special discussion, as it clearly demonstrates Defendant's bias against Plaintiff and its application. At the time that it limited the MEP application window, the Council knew that Plaintiff was interested in applying for an MEP, that Plaintiff would be incapable of submitting an MEP application within four days, and that this meant that LaBonville would win by default. Thus, the Council purposely undertook an action that it knew would prevent more than one applicant from submitting an MEP application.

The Commission further demonstrated Defendant's egregious bias against Plaintiff when it finally held a hearing on Plaintiff's SUP application on July 12. The Commission asserted, in essence, that it was denying Plaintiff's SUP application because it was mutually exclusive with LaBonville's applications, which had already been approved. This

11

explanation, which was also offered by the Council when it denied Plaintiff's MEP application, shocks the conscience when one considers that it was Defendant's conduct that actively prevented Plaintiff's SUP application from competing with LaBonville's. The Council also cited Plaintiff's SUP application for failing to include certain information, even though the same or similar information was missing from LaBonville's SUP application, which it had already approved. This decision was arbitrary and capricious; the standard was applied differently between the similarly situated applicants.

Defendant also cannot tenably argue that it chose LaBonville's application over Plaintiff's based on merit, because such an argument misconstrues the systematic nature of Defendant's misconduct. Defendant not only designed its application processes to be anti-competitive, but also seems to have violated its own rules by allowing LaBonville to submit her application before the application window opened. This guaranteed that LaBonville would *always* be the first applicant scheduled for a hearing with the Commission. It also guaranteed that the Commission would not hold hearings on other SUP applications for two months, a delay which gave the Council enough time to finish rubber-stamping LaBonville's applications. At this point, the Council could (and did) use its previous approval of LaBonville's applications as a basis to Plaintiff's applications. Thus, merit had nothing to do with the application process; even if Plaintiff's application was submitted at the earliest possible moment and perfectly complied with all applicable standards, Defendant's conduct would ensure that LaBonville's application was approved.

Although the Commission technically gave Plaintiff a hearing on July 12, 2022, this hearing was a farce, and the Commission ultimately recommended denial of Plaintiff's SUP application, not because of any substantive flaws, but based on Defendant's previous

approvals of LaBonville's applications. This shows that the Commission never intended to give Plaintiff a *meaningful* opportunity to be heard and also shows that the quality of Plaintiff's SUP application had nothing to do with Defendant's denial. Defendant's arbitrary and capricious conduct clearly violated Plaintiff's substantive due process rights, by designing and implementing its application process in an oppressive manner that denied Plaintiff a fair opportunity to apply for the permits that it needed to develop its property.

Defendant also violated Plaintiff's procedural due process rights by subjecting Plaintiff to the arbitrary whims of a biased decision-maker. The only procedure afforded to Plaintiff bearing any resemblance to due process came with Plaintiff's hearing with the Commission on July 12, 2022. However, the date of the hearing was delayed until after the Council had already approved LaBonville's applications, precisely because Defendant wanted to use that approval as a basis to deny Plaintiff's applications. The procedures governing the scheduling of Plaintiff's hearing with the Commission were not at all tailored to Plaintiff's needs and interests, served no legitimate purpose, and were implemented to ensure that only LaBonville's applications would receive any meaningful consideration. Thus, Plaintiff was never given procedural due process, because Defendant's biased enforcement of flawed procedures made denial of its application a foregone conclusion.

### B. Defendant Violated Plaintiff's Rights Under the Equal Protection Clause

Defendant also violated the Equal Protection Clause of the Fourteenth Amendment. The Equal Protections Clause provides that governments shall not "deny to any person within its jurisdiction the equal protection of the laws". U.S. Const. amend. XIV, §1. Although it is typically invoked in cases involving governmental discrimination on the basis of immutable characteristics, the Equal Protection Clause also protects against instances of

so-called "class-of-one" discrimination, where a governmental actor arbitrarily and irrationally singles out one person for poor treatment or arbitrary abuse. *See Geinosky v City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Class-of-one discrimination "is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive ... comes down hard on a hapless private citizen.'" *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013), *quoting Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005).

A class-of-one discrimination claim is subject to rational basis review. A Plaintiff asserting such a claim must show (1) that the plaintiff was intentionally treated worse than similarly situated comparators, and (2) that there was no rational basis for the different treatment. *Village of Willowbrook v Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). There is no rational basis for disparate treatment when a governmental actor makes classifications that are "without any reasonable basis", or which are "purely arbitrary". *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61 (1911). Such classifications must "rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412 (1920).

Plaintiff and LaBonville were similarly situated comparators for the purposes of this analysis; both were applying for the same permits to operate the same type of establishment, and both possessed one of the three parcels of land within the MJ-1 district. It is also readily apparent that that Defendant intentionally subjected Plaintiff to treatment far worse than how it treated LaBonville. As discussed above, Defendant's application process was designed to provide an insurmountable advantage to whichever application was submitted first. There is

14

also significant evidence showing that LaBonville coordinated with the Council to ensure that her application would be submitted first, and that Defendant violated its own Ordinance to allow LaBonville to submit her application before any potential competitors.

This deferential favoritism toward LaBonville strongly contrasts with Defendant's treatment of Plaintiff. Plaintiff submitted physical copies of its SUP application on May 10, 2022, less than a month after the enactment of Ordinances Nos. 42 and 43. That same day, Plaintiff's counsel informed Defendant's attorney of this submission via email and requested that Defendant alter the Commission's restrictive hearing schedule so that it could have an opportunity to present its case. Defendant's attorney responded by saying that Defendant "will follow its process, which includes competitive review *if needed*". This response perfectly encapsulates Defendant's disregard for the equal protection of law and its willingness to subject applicants to disparate treatment. Despite promising to investigate Plaintiff's application and receiving several emails from Plaintiff, Defendant apparently did not review that application until June 2, and its review was limited to an email informing Plaintiff that it needed to submit a digital copy of its SUP application. Thus, during the three-week period after Plaintiff's SUP application was submitted, Defendant found the time to schedule hearings regarding LaBonville's application with the Council and the Commission but, despite frequent prompting from Plaintiff, it somehow could not find a single minute to review Plaintiff's application and advise Plaintiff to submit a digital copy.

Defendant has only identified two reasons for why it denied Plaintiff's application, namely: (1) Plaintiff's application was submitted after LaBonville's application, and (2) that Plaintiff's application failed to provide all the information set forth in the statute. Neither explanation provides a rational basis justifying Defendant's discriminatory treatment.

15

Defendant's reliance on the order in which the applications were submitted has no fair or substantial relation to the stated objective of Defendant's Ordinances or MCL 333.27959(4), which are both "intended to select applicants who are best suited to operate in compliance with [MRTMA] within the municipality". MCL 333.27959(4). There is no correlation between how quickly an applicant submits their application and the quality of that application. Several of Defendant's actions, such as its decision to limit the MEP application window to only four days, were directly contrary to this stated purpose, because they made it functionally impossible for more than one applicant to participate in the application process. Defendant has not provided any evidence showing how it stood to benefit in any way from this unreasonably brief application window, and any claim to that effect is belied by the differences between the two applications. Plaintiff's proposed facility was created by modifying an existing structure, as opposed to LaBonville's application, which required the demolition of an existing structure and the construction of an entirely new structure. Whatever time Defendant saved by curtailing its application process is more than offset by the time LaBonville will need to construct her proposed facility.

The only official document from Defendant showing that the completeness of Plaintiff's SUP application played any role in Defendant's analysis was Defendant's August 8, 2022 resolution, which referenced Plaintiff's alleged failure to provide dimensions for its "Waiting & Reception room" and "Show Area" and claimed that Plaintiff's parking calculations "cannot be verified under §11A.6 [of Ordinance No. 42]". Any claim that Plaintiff's application was denied for this reason, rather than Defendant's arbitrary preference for LaBonville, is untenable for a myriad of reasons. First, this critique was not mentioned at Plaintiff's July 12 hearing with the Commission, the entity responsible for

16

reviewing SUP applications. The only basis the Commission offered for its recommendation to deny Plaintiff's application was that another application was previously approved.

Defendant also failed to note several analogous deficiencies in LaBonville's application. For example, one criticism Defendant's attorney raised in his June 14 email regarding Plaintiff's SUP application was that "[a] proposed method of providing storm drainage was not shown pursuant to §14.1(C)(2)(a)(2)(xii) [of Ordinance No. 42]". However, this criticism exposes a double standard. LaBonville's SUP application did not provide any meaningful information regarding the storm water drainage system of her facility; it merely identified an area for a "proposed storm water detention location" and described the final design as "to be determined". Defendant's critiques of the thoroughness of Plaintiff's SUP application are also undermined by its decision to quickly approve LaBonville's SUP application, which was less detailed than Plaintiff's in several important respects. For example, Plaintiff's special use permit application included an elaborately rendered 3D model of its proposed facility and the adjacent parking lot, as well as a detailed photometric site plan confirming that the light fixtures installed at Plaintiff's facility complied with the lighting restrictions found in §5(3) of Ordinance No. 42. Neither of these important details was provided in LaBonville's SUP application.

Lastly, Defendant's critiques had little to do with whether Plaintiff's proposed facility would *actually* comply with its Ordinances, and only focused on how Plaintiff failed to explicitly list the specific information requested by Defendant's form. This is a critical distinction, because Plaintiff's failure to provide this information was a direct and foreseeable result of its inability to access the application forms that Defendant proactively provided to LaBonville. Because Plaintiff did not have access to this application form when

17

it submitted its SUP application, it had to rely on the language of Ordinance No. 42. However, the few parts of Ordinance No. 42 that discussed the information that needed to be included with the special use permit application, and the requirements referenced in Ordinance No. 42 were different from, and often far less stringent than, the requirements set forth in the form completed by LaBonville.

For example, §2 of Ordinance No. 42 amended Sanford's existing Zoning Ordinance to create a new Section: §11A. §11A(6), required that, in addition to complying with other parking restrictions applicable to other types of buildings, a proposed marihuana establishment must provide for a certain number of parking spaces, based on the square footage of the proposed facility and the number of employees working at the facility. In its August 8, 2022 resolution denying Plaintiff's SUP application, Defendant criticized Plaintiff for failing to include specific figures regarding the square footage of its proposed facility. However, nothing in §11A(6) actually required Plaintiff to provide these calculations; all that was required was that the proposed facility have enough parking spaces.

Another criticism cited by Defendant's attorney was Plaintiff's alleged failure to "include certain topographical features in its site plan as required by" § 14.1(C)(2)(a)(2). This criticism reveals just how insurmountable of an advantage that LaBonville acquired by having access to the SUP application form. It is notable that Defendant apparently provided this form to LaBonville prior to April 16, 2022, because even though Defendant's employees clearly knew that Plaintiff was interested in applying for the same permits as LaBonville and had corresponded with Plaintiff regarding its application for several weeks, they did not give Plaintiff this form until after Plaintiff submitted its SUP application.

18

With the benefit of access to the SUP application form provided to LaBonville by Defendant, we can see that Defendant's counsel was apparently referencing Plaintiff's failure to include "contours no greater than two (2) feet" in its application. However, this requirement is not stated anywhere within Ordinance No. 42, and can only be found elsewhere in Defendant's Zoning Ordinance. The only information Ordinance No. 42 provides in this regard is a statement saying these restrictions can be found in "§14.1.C.2 of this ordinance". Upon information and belief, the full text of Defendant's current Zoning Ordinance is not readily available to the public. Defendant does provide the text for its original Zoning Ordinance (passed in 1963) and for 35 of its subsequent Ordinances amending that Zoning Ordinance. However, any Applicant patient enough to cross-reference the complex interactions between the 340 pages of zoning rules on Defendant's website would be disappointed, because the §14 referenced in Ordinance No. 42 does not appear in that document. Although Defendant's attorney belatedly provided the text of §14 to Plaintiff, he only did this on after Plaintiff's application was submitted on June 14, by which time it was too late to correct errors resulting from Plaintiff's inability to access that document.

These facts provide yet further evidence of Defendant's blatant favoritism for LaBonville's application, and also undermine any arguments based on the "completeness" of Plaintiff's application. To the extent that Plaintiff's application was "incomplete", it was incomplete only because Defendant selectively withheld access to a necessary form and the text of §14. Moreover, this incomplete status was a temporary condition and was rectified as soon as Plaintiff gained access to the SUP form and the text of §14. This temporary flaw, which had no bearing on Plaintiff's ability to operate its proposed facility in compliance with the MRTMA, is exactly the kind of issue that any *competitive* application process

would quickly resolve by making the application forms and the text of §14 available to all interested parties. Defendant cannot tenably claim that Plaintiff's temporary failure to overcome an artificial obstacle has any bearing on the quality of its application, especially when Defendant's own conduct created this obstacle for some applicants, but not for others.

### C. Defendant's Application Process Was Not Designed to Select the Most Qualified Applicant and Was Not Competitive

Defendant's application process is also unlawful because it was anti-competitive by design and was never intended to select the applicant most qualified to operate in compliance with the MRTMA. At MCL 333.27959(4), the MRTMA provides that applicants for municipal marihuana licenses are entitled to a "competitive process":

> If a municipality limits the number of marihuana establishments that may be licensed in the municipality pursuant to [§3 of MRTMA] and that limit prevents the department from issuing a state license to all applicants…the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality.

> This language closely tracks the language of Defendant's Ordinance No. 43:
> If more complete applications are submitted for an Establishment than available Permits…the Village will decide among competing applications by a competitive review process intended to select applicants who are best suited to operate in compliance with MRTMA and this Ordinance within the Village.

The main distinguishing factor here is that, per Ordinance No. 43, Defendant is only obligated to conduct a competitive review process if it receives more than one "complete" application, whereas MCL 333.27959(4) provides that Defendant must ensure that the implementation of a competitive process among "competing applications". The most plausible explanation for Defendant's decision to deviate from the MRTMA standard is that it *intended* to undermine the guarantee of competitive review provided by Michigan law. Moreover, by legislating that Defendant would have discretion over the determination of

whether an application was "complete", Defendant gave itself a convenient legal pretext to blame applicants for Defendant's own failures. However, Defendant cannot escape its obligation to provide a competitive application process; MCL 333.27956(3) prohibits municipalities from adopting ordinances that conflict with obligations under the MRTMA:

> A municipality may adopt an ordinance requiring a marihuana establishment with a physical location within the municipality to obtain a municipal license, but may not impose qualifications for licensure that conflict with this act or rules promulgated by the department.

Here, applicants seeking SUPs and MEPs were required to undergo the application processes established by Ordinances Nos. 42 and 43. Because compliance with Defendant's application processes was a "qualification" for obtaining a marihuana license per MCL 333.27956(3), those processes cannot conflict with MCL 333.27959(4), which mandates that Defendant must implement a process that is both "competitive" and designed to select the applicant most likely to operate in compliance with the MRTMA.  Both in theory and in practice, Defendant's application processes were contrary to these goals. Defendant's system gave insurmountable advantages to whichever application was submitted first, thereby limiting the pool of applications and making it less likely that Defendant could accurately determine which applicant was most qualified. Moreover, because Defendant could deny any subsequent applications based on its decision to accept the first application submitted, its application process was essentially a first-come, first-serve situation. Such a system clearly is not "competitive". By any reasonable interpretation, Plaintiff's application was a "competing application" and was entitled to receive the protection of "competitive process" afforded by the MRTMA. If Plaintiff's application was somehow "incomplete", this was only true because Defendant's application processes were designed to ensure that

LaBonville's application was the only "complete" application and because Defendant deprived Plaintiff of the forms and feedback it needed.

## II.   PLAINTIFF WILL SUFFER IRREPARABLE INJURY

Plaintiff will suffer irreparable harm unless this Court agrees to grant a preliminary injunction, because it will be permanently prevented from developing its proposed marihuana establishment. As detailed above, only a single marihuana establishment can operate within the MJ-1 District established by Defendant's Ordinances, and Defendant essentially rigged the process to ensure that LaBonville's proposed facility was selected. If LaBonville obtains a state marihuana license for her proposed facility during this litigation, then Defendant may use the issuance of that state license to argue against the validity of Plaintiff's proposed facility, as it would be impossible for the facilities to operate simultaneously. Thus, this Motion should be granted, because Plaintiff will suffer an irreparable injury unless the injunction is entered.

## III.   THE BALANCE OF EQUITIES WEIGHS IN PLAINTIFF'S FAVOR, BECAUSE THE REQUESTED INJUNCTION WILL NOT SUBSTANTIALLY INJURE OTHERS

Only two entities can feasibly claim that they would suffer any harm if the Court decides to grant Plaintiff's request for a preliminary injunction, namely: LaBonville, who would be prevented from developing her property into a marihuana establishment and, Defendant, who could be deprived of any tax revenue it stands to earn from the operation of LaBonville's establishment. Because neither of these entities will be substantially harmed by the requested injunction, the balance of equities weighs in Plaintiff's favor.

Before she can begin operating her proposed marihuana establishment, LaBonville needs to demolish the existing structure on her property, construct a new building, ensure that the utilities and services provided to the previously residential land parcel comply with

regulations applicable to a commercial property, implement the unfinished storm water, parking, and sewage systems listed in her SUP application, furnish the building with the fixtures necessary to operate a marihuana establishment, and apply for a state license from the MMRA. LaBonville will likely require one or more years to complete these tasks, and there is no indication that she has even started work on the proposed facility. Accordingly, imposing a preliminary injunction would not cause any substantial harm to LaBonville.

Defendant also cannot claim that it would suffer any substantial injury from the loss of tax revenue from the proposed facility, because it had no realistic expectation of receiving such revenue from LaBonville's proposed facility in the foreseeable future. When Defendant hastily approved LaBonville's applications, it was aware of the extensive modifications necessary before she could begin operating her proposed facility. By approving LaBonville's applications and refusing to give any meaningful consideration to other applications requiring less extensive modifications, Defendant implicitly indicated its willingness to wait for an extended period before receiving any revenue from the operation of a marihuana establishment. Accordingly, the issuance of the requested preliminary injunction also would not result in any substantial harm.

## IV.   THE REQUESTED INJUNCTION FURTHERS THE PUBLIC INTEREST

The preliminary injunction requested by Plaintiff would promote several public interests. First, such an injunction would mitigate corruption. In municipalities such as Sanford, where only one marihuana retailer can legally set up shop, granting a municipal marihuana license is tantamount to granting a government-sanctioned monopoly on legal commercial marihuana sales. When it becomes known that a municipality is willing to manipulate its systems to ensure that only favored parties receive potentially lucrative

municipal licenses, it becomes increasingly likely that nefarious parties will seek to take advantage by engaging in corruption, bribery, or nepotism. Even if neither applicants nor government officials are engaging in any criminal conduct, permitting such violations promotes the appearance of impropriety and corruption, which could serve to decrease the citizens' trust in the fairness and impartiality of government officials.

Granting this injunction would also promote compliance with Michigan marihuana laws. The stated goals of the MRTMA include "prevent[ing] the distribution of marihuana to persons under 21 years of age[,] prevent[ing] the diversion of marihuana to illicit markets[,] ensur[ing] the safety of marihuana and marihuana-infused products[,] and ensur[ing] security of marihuana establishments". MCL 333.27952. To achieve these goals, the MRTMA imposes comprehensive restrictions on establishments seeking licenses. Many of these restrictions are often difficult to understand and burdensome to follow, and this is exactly why the MRTMA places such great importance on requiring a competitive application process designed to select the applicants most likely to comply with them. Defendant's application process prioritizes irrelevant factors, such as interpersonal relationships between the applicant and government officials or the promptness of the application, over an applicant's actual ability to comply with the MRTMA and does not promote compliance with Michigan's marihuana laws. In fact, such an application process makes unfavorable outcomes, such as the diversion of money or marihuana products into the illicit market or the sale of marihuana products to minors, far more likely to occur. Preliminary injunctions, such as the one requested by this Motion, provide a strong disincentive to any nefarious parties seeking to take advantage of the delays inherent in the legal system by reducing the financial incentives to commit improper conduct. If other

potential violators believe that the legal system will work too slowly to effectively prevent or punish their violations, they will not be dissuaded from engaging in similar conduct.

### Conclusion

Given the facts and arguments presented above, it is clear that Plaintiff can establish all the requisite elements for a preliminary injunction. Accordingly, the Court should grant Plaintiff's Motion and enter a preliminary injunction enjoining Defendant from awarding its SUP and MEP to LaBonville and from certifying LaBonville's compliance with its municipal marihuana ordinances to the MMRA.