# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

HP SANFORD, LLC,

        Plaintiff,                Case No. 22-cv-12175-LVP-CI

v                                    HON. LINDA V. PARKER

VILLAGE OF SANFORD,

        Defendant.

_____

| | |
|---|---|
| Anderson J. Grandstaff (P81331) | Christopher S. Patterson (P74350) |
| Attorney for Plaintiff | Matthew A. Kuschel (P76679) |
| 1812 Crestline Dr. | *Fahey Schultz Burzych Rhodes PLC* |
| Troy, MI 48083 | Attorneys for Defendant |
| Anderson.j.grandstaff@gmail.com | 4151 Okemos Road |
| | Okemos, MI 48864 |
| | (517) 381-0100 |
| | cpatterson@fsbrlaw.com |
| _____/ | mkuschel@fsbrlaw.com |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.........................................................................................iii

STATEMENT OF FACTS ...........................................................................................2

I.      Ordinance 42: Zoning Ordinance Amendment ................................................2

II.     Ordinance 43: Michigan Regulation and Taxation of Marijuana Act—
        Local Regulation...............................................................................................3

III.    Ordinances Adopted and Applications Submitted ...........................................3

ARGUMENT ...............................................................................................................5

I.      PLAINTIFF'S REQUESTED RELIEF IS MOOT BECAUSE THE
        VILLAGE OF SANFORD HAS ALREADY TAKEN THE
        ACTIONS PLAINTIFF SEEKS TO ENJOIN. ................................................5

II.     PLAINTIFF CANNOT SUCCEED ON THE MERITS BECAUSE
        HE DID NOT SEEK A MARIJUANA PERMIT, IT HAS NO
        LEGAL PROPERTY INTEREST THAT COULD BE INJURIED
        AND THE ISSUANCE OF THE INJUNCTION WOULD CAUSE
        SUBSTANTIAL HARM TO OTHERS AND THE PUBLIC. .......................9

        A.      Plaintiff Does Not Have A Strong Likelihood Of Success On
                The Merits. ..........................................................................................10

                1.      Plaintiff is not likely to succeed on its substantive and
                        procedural due process claims. ..................................................11

                2.      Plaintiff is not likely to succeed on its equal protection
                        claim. ..........................................................................................15

                3.      Plaintiff is not likely to succeed on its MRTMA claim............19

        B.      Plaintiff Has Not Established It Would Suffer An Irreparable
                Harm. ...................................................................................................20

        C.      The Issuance Of The Injunctive Relief Plaintiff Seeks Would
                Substantially Injure Others...................................................................21

D.    The Public Interest Would Be Harmed By The Issuance Of A
Preliminary Injunctive In This Case. ...................................................22

III.    PLAINTIFF'S REQUESTED RELIEF MUST BE DENIED
BECAUSE IT DIRECTLY IMPLICATES THE INTERESTS OF A
PARTY IT FAILED TO JOIN. ......................................................................24

CONCLUSION AND REQUEST FOR RELIEF....................................................25

CERTIFICATE OF SERVICE ...............................................................................26

# INDEX OF AUTHORITIES

## Cases

*Blaylock v. Cheker Oil Co.*,
  547 F.2d 962 (6th Cir., 1976) ................................................................6

*Braun v. Ann Arbor Charter Twp.*,
  519 F.3d 564 (6th Cir. 2005) ..............................................................15

*Brent v. Meeker*,
  2017 WL 10811557 (M.D. Florida, November 7, 2017) ......................22

*Burniac v Wells Fargo Bank, N.A.*,
  810 F.3d 429 (2016) ..............................................................................6

*EJS Properties, LLC v. City of Toledo*,
  698 F.3d 845 (6th Cir. 2012) ....................................................... 11, 18

*Escamilla v M2 Technology*,
  2012 WL 4506081 at *6 (E.D. Texas, July 6, 2012) ................... 22, 24

*Exclusive Brands LLC v. City of Garden City, Mich.*,
  No. 19-CV-11062, 2020 WL 5367331 (E.D., Mich 9/8/2020) ...........12

*Fialka-Feldman v Oakland Univ. Bd. of Trustees*,
  639 F.3d 711 (6th Cir., 2011) ................................................................6

*In re City of Detroit*,
  841 F.3d 684 (6th Cir. 2016) ..............................................................15

*Leary v. Daeschner*,
  228 F.3d 729 (6th Cir. 2000) ..............................................................18

*Loesel v. City of Frankenmuth*,
  692 F.3d 452 (6th Cir. 2012) ....................................................... 15, 17

*Radiant Flobal Logistics, Inc. v. Furstenau*,
  951 F.3d 393 (6th Cir. 2020) ................................................................6

*Radvansky v. City of Olmsted Falls*,
  395 F.3d 291 (6th Cir. 2005) ..............................................................15

*Rettig v. Kent City School Dist.*,
   788 F.2d 328 (6th Cir. 1986) ................................................................. 5

*Richardson v. Twp. of Brady*,
   218 F.3d 508 (6th Cir. 2000) ................................................................. 12

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*,
   119 F.3d 393 (6th Cir. 1997) ................................................................. 10

*Thomas Sysco Food Servs v. Martin*,
   983 F.2d 60 (6th Cir. 1993) ................................................................. 5

*Warren v City of Athens, Ohio*,
   411 F.3d 697 (6th Cir. 2005) ................................................................. 17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................. 10

## Statutes

MCL 333.27951 ................................................................. 2

MCL 333.27956(2)(b) ................................................................. 3

MCL 333.27956(3) ................................................................. 3

MCL 333.27959(1) ................................................................. 8

MCL 333.27959(3)(b)] ................................................................. 8

MCL 333.27959(4) ................................................................. 3

## Other Authorities

21 USC 812 Schedule 1(c)(10) ................................................................. 9

## Rules

Fed. R. Civ. P. Rule 12(b)(7) ................................................................. 24

Fed. R. Civ. P. Rule 19(a)(1) ................................................................. 24

Fed. R. Civ. P. Rule 65(a) ................................................................. 1

**BRIEF IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

HP Sanford LLC ("Plaintiff") filed this lawsuit seeking to have this Court weigh in on and ultimately interfere with the state and local processes required to obtain a recreational marijuana establishment permit. Six weeks after filing its complaint, Plaintiff now seeks the extraordinary relief a "preliminary injunction enjoining [the Village] from awarding its [special use permit] and [marijuana establishment permit] to LaBonville and from certifying LaBonville's compliance with its municipal marihuana ordinances to the [Michigan Marihuana Regulatory Agency]." (ECF no. 6, PageID.96). This request, however, must not be denied by this Court for any of the following three reasons: (1) Plaintiff's requested relief is moot because it is legally impossible to enjoin the Village from taking actions it has already taken since a special use permit and a recreational marijuana establishment permit have been issued to LaBonville; (2) Plaintiff comes nowhere near meeting its burden to be entitled to the extraordinary relief available under Fed. R. Civ. P. Rule 65(a); (3) Plaintiff's requested relief directly implicates the interests of a party it failed to join at the outset of this lawsuit.

Through this response, the Village will demonstrate that not only is Plaintiff's lawsuit without merit, but this specific request for preliminary injunctive relief is beyond the pale.

1

## STATEMENT OF FACTS

Marijuana for recreational use was authorized by Michigan voters in December 2018. *See* MCL 333.27951 *et seq.* ("MRTMA"). The Village carefully considered whether and how to allow recreational marijuana from November 2021 to March 2022. Deciding to move forward, the Village adopted two ordinances.

## I.    Ordinance 42: Zoning Ordinance Amendment

First, in enacting Ordinance 42 ("Zoning Ord. 42"), the Village made land use determinations—where the marijuana establishments would be permitted in the Village—and created an overlay district on three parcels north of the Saginaw Road and M-30 intersection. (Zoning Map, ECF No. 1-2, PageID.49)

Second, Zoning Ord. 42 established a procedure to apply for all special use permits as well as a process for the planning commission to consider special use permit applications (*Id.* at PageID.46). Each application is individually scheduled for a public hearing at its own meeting following the order in which they are received (*Id.* at § 15.2(B), (C); PageID.46). The planning commission holds the hearing and makes a recommendation to the Village Council (*Id.* at § 15.2(D), (E); PageID.46). The Village Council then considers the application, the ordinance, the planning commission recommendation, and any other applicable rules and regulations before arriving at a final decision (*Id.* at § 15.2(G); PageID.46).

2

## II.    Ordinance 43: Michigan Regulation and Taxation of Marijuana Act— Local Regulation

Municipalities like the Village have authority to "regulate the time, place, and manner of operation of marijuana establishments . . .." MCL 333.27956(2)(b). The Village exercised this right with Ordinance 43 ("Marijuana Ord. 43") on April 6, 2022, and required any operating marijuana establishment in the Village to obtain a local MRTMA permit. *See* MCL 333.27956(3).

The Village Council was responsible for determining the opening of the application window (PageID.24). Applications must contain over 12 categories of detailed information regarding the planned operation of the marijuana establishment (PageID.24-26). If there is more than one applicant for a local marijuana operating permit, MRTMA may require competitive review. MCL 333.27959(4).

## III.    Ordinances Adopted and Applications Submitted

The Village was approached to consider whether to "opt-in" in November 2021 during public comment by Sue LaBonville (ECF No. 1, PageID.3; ECF No. 7-2, PageID.243). At the next Council meeting the issue was further explored, including "approximately one hour" of public comment (ECF No. 7-3, PageID.247). On April 6, 2022, after a public hearing and recommendation from the Commission, the Village adopted Zoning Ord. 42 amending the zoning ordinance to create the Marijuana Overlay District (Notice of Adoption, PageID.52). Next, the Village

implemented the regulatory framework, requiring a local MRTMA permit under Marijuana Ord. 43 (Notice of Adoption, PageID.52).

LaBonville filed her SUP application the morning the ordinance became effective, April 16, 2022. (ECF No. 1, PageID.7). Plaintiff filed its SUP application "[o]n or around May 10, 2022" (ECF No. 1, PageID.7). On May 24, 2022, the Planning Commission reviewed LaBonville's SUP application and recommended approval of the same (ECF No. 1, PageID.7). The Village Council agreed and issued a SUP to LaBonville (ECF No. 1, PageID.8).

Plaintiff's zoning application was incomplete and could not be processed properly because it lacked an electronic copy for review (ECF No. 1, PageID.8). Plaintiff submitted its files on June 10, 2022, and was advised of deficiencies four days later on June 14, 2022 (ECF No. 1, PageID.8). Four specific defects were cited (Kuschel email, 6/14/2022, PageID.57.). Plaintiff was also advised of the general delay in hearing applications for a SUP. *Id.*

The Village opened the application window for local MRTMA permits at its regular meeting on June 13, 2022 (ECF No. 1, PageID.8). Although Plaintiff was not present at the June 13 meeting, Attorney Kuschel advised it the next day that the application window had opened (ECF No. 1, PageID.57). The Village received only one application, which was submitted on June 14 (ECF No. 7-7, PageID.259). After discussion of the 159-page application, the Village Council issued a local MRTMA

permit to the only applicant: LaBonville (*Id.* at 2; ECF No. 1, PageID.9). Under Marijuana Ord. 43, Plaintiff did not apply for a permit (*Id.*).

At its regular meeting on July 12, 2022, the Planning Commission considered Plaintiff's SUP application (ECF No. 1, PageID.9). The Commission noted that the "[i]nitial application was incomplete; supplemental documents submitted June 2022" (ECF No. 7-6, PageID.257). The Commission recommended the special use permit be denied (*Id.*; ECF No. 1, PageID.9). The Village Council agreed at its next meeting and denied the SUP application (ECF No. 1, PageID.9-10). Plaintiff did not—and does not—allege any appeal of this denial.

## ARGUMENT

## I.   PLAINTIFF'S REQUESTED RELIEF IS MOOT BECAUSE THE VILLAGE OF SANFORD HAS ALREADY TAKEN THE ACTIONS PLAINTIFF SEEKS TO ENJOIN.

"Article III of the United States Constitution limits federal courts to the adjudication of actual, ongoing, cases and controversies." *Thomas Sysco Food Servs v. Martin*, 983 F.2d 60, 62 (6th Cir. 1993). "To satisfy the case or controversy requirement, an actual controversy **must exist at all stages of review**, and not simply on the date the action is initiated." *Rettig v. Kent City School Dist.*, 788 F.2d 328, 330 (6th Cir. 1986) (emphasis added). "The general function of a preliminary injunction is to maintain the status quo pending determination of an action on its merits." *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir., 1976); *see also*

*Burniac v Wells Fargo Bank, N.A.*, 810 F.3d 429, 435 (2016). Nonetheless, preliminary injunctive relief may be deemed moot when the requested relief would no longer have an effect. *Radiant Flobal Logistics, Inc. v. Furstenau*, 951 F.3d 393 (6th Cir. 2020). Where events occur that make it impossible for the court to grant the relief sought, the suit must be dismissed as moot. *Fialka-Feldman v Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir., 2011).

In this case, Plaintiff specifically requests a "preliminary injunction enjoining [the Village] from awarding its [special use permit] and [marijuana establishment permit] to LaBonville and from certifying LaBonville's compliance with its municipal marihuana ordinances to the [Michigan Marihuana Regulatory Agency]." (ECF no. 6, PageID.96). This relief is phrased in a manner to preserve the status quo. However, all of Plaintiff's relief claims are moot because they have already happened or the Village is not required to take actions sought to be enjoined. For these reasons more thoroughly explained below, Plaintiff's requested relief should be deemed as moot and denied accordingly.

Plaintiff seeks to enjoin the Village from issuing LaBonville two permits. However, there is a major flaw in this request for injunctive relief—LaBonville already has the permits. Importantly, Plaintiff knew LaBonville had already been issued the permits as its Complaint and an exhibit to its own motion reference the

fact that LaBonville was awarded a special use permit and a marihuana establishment permit. Each was prior to the filing of Plaintiff's lawsuit.

First, Plaintiff itself alleges in its Complaint that on "June 13, 2022, the [Village] Council . . . issued a Special Use Permit to LaBonville pursuant to Ordinance No. 42." (ECF no. 6-2, PageID.106). The present motion was not filed until November—over four months after the SUP was issued.

Second, Plaintiff itself also alleges that the Marijuana Ord. 43 permit has been issued. It alleges that "on July 11, 2022, the Council approved LaBonville's application for a Marijuana Establishment Permit." Again, the present motion requests relief which occurred over three months in the past.

Finally, Plaintiff attached the article "Sanford council grants retail marijuana license" to its motion. (ECF no. 6, PageID.198). The article is dated July 12, 2022 and states that the Village agreed "to accept Sadler & Son LLC / LaBonville Properties recreational marijuana permit . . . ." (ECF no. 6, PageID.198-99). Plaintiff is therefore aware and does not dispute that the Village has already issued the Marijuana Ord. 43 permit to LaBonville. The same article notes—and Plaintiff does not dispute—that HP Sanford LLC "did not file a license application by the June 17 deadline." (ECF no. 6, PageID.201).

Plaintiff is aware that the status quo at the outset of this lawsuit was LaBonville's possession of the zoning and marijuana permits. Yet, Plaintiff still

requested relief that would prohibit the Village from awarding the permits. Simply put, this requested relief is legally flawed and as plainly written, seeking the Village to be enjoined from awarding LaBonville permits is moot and should be denied.

Lastly, Plaintiff does additionally seek injunctive relief enjoining the Village from certifying LaBonville's compliance with its Ordinances to the Cannabis Regulatory Agency ("CRA").[1] However, this claim is also legally flawed. The state regulation of marijuana establishments allows state licensure without an affirmative act by the municipality.

Michigan's statutes and regulations detail the process the state undergoes to determine if an applicant for a marihuana establishment is in compliance with a municipality's ordinances. Specifically an applicant seeking a state license is in compliance if:

> (b) the municipality in which the proposed marihuana establishment will be located does not notify the department that the proposed marihuana establishment is not in compliance with an ordinance consistent with section 6 of this act and in effect at the time of application[.] [MCL 333.27959(3)(b)]

In other words, a municipality is under no obligation to affirmatively certify compliance. Rather, the State of Michigan will review the state license application and "issue the appropriate state license" unless a municipality notifies them of noncompliance. MCL 333.27959(1). Nonetheless, despite the clear meaning of the

---

[1] Plaintiff incorrectly identifies the state regulator as the MMRA.

plain language of the statue, Plaintiff seeks to enjoin the municipality from certifying compliance to the CRA. Again, Plaintiff's requested relief is moot by its own terms and provides no relief. Plaintiff conspicuously does not request the exceptional and singular obligation for the Village to notify the department of *noncompliance*. Not only is there no showing of noncompliance by LaBonville, but this Court would be injecting itself directly into a state regulatory scheme and approval that is contrary to federal law. See 21 USC 812 Schedule 1(c)(10).

As evidenced in Plaintiff's own Complaint and filings with this motion, the requested relief cannot be provided. The Village cannot withhold a permit it has already granted. Plaintiff's delayed complaint and further delayed request for preliminary injunction can only maintain the status quo at filing. There is no factual dispute that Plaintiff seeks to prevent the Village from issuing permits that LaBonville currently holds.

II.    **PLAINTIFF CANNOT SUCCEED ON THE MERITS BECAUSE HE DID NOT SEEK A MARIJUANA PERMIT, IT HAS NO LEGAL PROPERTY INTEREST THAT COULD BE INJURED AND THE ISSUANCE OF THE INJUNCTION WOULD CAUSE SUBSTANTIAL HARM TO OTHERS AND THE PUBLIC.**

To determine whether to issue the extraordinary relief of a preliminary injunction a district court considers four factors:

(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.*

In this case, Plaintiff has not met its burden because it has not demonstrated that the relevant four factors tip the balance of equities in its favor. In point of fact, any balancing weighs strongly against Plaintiff and in favor of the Village. Therefore, this Court should deny Plaintiff its requested preliminary injunctive relief.

### A.    Plaintiff Does Not Have A Strong Likelihood Of Success On The Merits.

"[A] plaintiff must show more than a mere possibility of success" to establish that it has a strong likelihood of success on the merits. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). "However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation and thus for more deliberative investigation." *Id.*

10

In this case, the Village has already moved to dismiss all Plaintiff's claims under Rules 12(b)(6) and 12(b)(7), arguing in large part Plaintiff has failed to even state a claim upon which relief could be granted. (ECF No. 7, PageID.206-268). In this response, the Village explains even further why Plaintiff's claims have no merit. For the following reasons as well as those expressed in the Village's response to Plaintiff's complaint, Plaintiff is unlikely to succeed on the merits of this case.

### 1. Plaintiff is not likely to succeed on its substantive and procedural due process claims.

Plaintiff alleges in this lawsuit the Village violated its rights to both substantive and procedural due process. However, Plaintiff's due process claims fail as a matter of law for two reasons: (1) Plaintiff has no legally protected property interest; (2) Even if Plaintiff did have a protected property interest, Plaintiff received a fair hearing and the Village's decision was not out of animus but was founded on rational bases.

It is well established a plaintiff must have a protected property interest in order to plead a substantive or procedural due process claim. See *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Plaintiff specifically argues it has a protected property interest because "Michigan Courts have long recognized that **property owners** such as Plaintiff have a significant interest in their property within the meaning of the Due Process Clause." (ECF No. 6 PageID.80) (emphasis added).

11

However, property owners do not have a protected property interested when a claim is premised upon a procedural injury during a pending permit process. See, e.g., *Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000); *Exclusive Brands LLC v. City of Garden City, Mich.,* No. 19-CV-11062, 2020 WL 5367331 (E.D., Mich 9/8/2020).

Moreover, even if this Court were to accept Plaintiff's claim that property owners have significant interest in their property, Plaintiff **is not a property owner but rather applied for the permits as, at best, a lessee.** In its application for an SUP, Plaintiff submitted "Authorization" from "the owner of the property located at 2045 N Meridian, Sanford" consenting to the SUP application (**Exhibit A**, Application Authorization, 4/28/22). There is no allegation in Plaintiff's complaint that it has any ownership interest in its contemplated location. In fact, Plaintiff's property interest is left unstated. In contrast, LaBonville owns the real property where she proposes to operate (ECF No. 1 PageID.4). Instead, Plaintiff's own application shows that it is not "the owner of the property located at 2045 N Meridian Sanford." (**Exhibit A**, Application Authorization, 4/28/22).

In short, Plaintiff's substantive and procedural due process claims are unlikely to succeed because Plaintiff has no protected property interests.

Furthermore, even if Plaintiff were able to establish a protected property interest, Plaintiff nonetheless received a fair process and only has itself to blame for

not being awarded the one permit it sought. Plaintiff complains the process it received in applying for an SUP and alleges favoritism. In point of fact, Plaintiff did not act expeditiously through the application process and submitted numerous deficient applications that resulted in further delay.

Plaintiff relies on its self-serving reading of electronic file names to construe dates and activity of non-party LaBonville. An examination of the record actually shows that her application was submitted the first day the zoning ordinance was effective. It is not surprising that LaBonville—a local resident who spearheaded bringing marihuana to the Village—would act quickly to submit her material. (ECF No. 6-3 PageID.120). LaBonville undertook "heavy lifting to bring cannabis to Sanford, [but] the village would have to consider all applications for permits, not just hers." (ECF No. 6-3 PageID.123). Plaintiff makes no allegation of any improper action by the Village and is forced to construe the naming conventions on electronic files it received from the Village's attorney.

Not only do the applications submitted clearly show signatures and receipt by the Village on the date the zoning ordinance was effective, but Plaintiff itself introduces evidence that LaBonville faced a competitive process. As an issue of public concern, the local newspaper followed marijuana closely. In a March 1, 2022 news article, LaBonville expressed and memorialized her own anxiety. It was reported that if "the village were to opt into cannabis sales, LaBonville is not assured

a permit, which is causing her a bit of anxiousness." (ECF No. 6-3 PageID.123). "LaBonville admits she is a bit worried about that stage of the process if the village does opt in." (*Id.*).

In her own words, LaBonville was anxious to apply and concerned about her competition. Such feelings and comments would not be present if there were any improper behavior or some preferential treatment. LaBonville knew what Plaintiff will not admit: that the Village had a fair process requiring that all applications be completely and fairly reviewed and evaluated under the same process.

Plaintiff submitted its SUP application around May 10, 2022—more than a month after public notice of the adoption of the relevant ordinances and several weeks after their effective date. By Plaintiff's own admission, its initial application was incomplete. Plaintiff's amended application was not "resubmitted" until June 10, 2022, which was itself also incomplete. Plaintiff does not dispute that these applications as submitted—whether in May or June—failed to comply with the site plan requirements.

In all, Plaintiff's due process claims are unlikely to succeed because Plaintiff cannot establish a protected property interest and received a fair process. LaBonville was ultimately awarded the marijuana establishment permit because, in the words of Councilman Carl Hamann, LaBonville's 159-page application was the "most complete application [he had] ever seen." (ECF No. 6-12 PageID.200).

14

## 2.   Plaintiff is not similarly situated to non-party LaBonville.

Under the Equal Protection Clause, the government cannot make distinctions that 1) burden a fundamental right; 2) target a suspect class; or 3) intentionally treat one individual differently from others similarly situated without any rational basis. *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff's Count II is a "class-of-one" claim. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574-75 (6th Cir. 2005). Class-of-one claims are generally viewed with skepticism because it is always possible for a Plaintiff to allege different treatment from others related to a government decision. *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461-62 (6th Cir. 2012). To succeed on such a claim, there are two requirements: (1) the Plaintiff must demonstrate similarly situated individuals have been treated differently; and, (2) the Plaintiff must "negate every conceivable basis which might support [the government's differential treatment]," or show the government action was motivated by animus. *Braun*, 519 F.3d at 575; *In re City of Detroit*, 841 F.3d 684, 702 (6th Cir. 2016) (discussing negating every conceivable basis within pleadings).

Plaintiff argues LaBonville and it were "similarly situated comparators for the purposes of this analysis [because] both were applying for the same permits to operate the same type of establishment, and both possessed one of the three parcels of land within the MJ-1 district." (ECF No. 6, PageID.5). However, Plaintiff fails to

acknowledge material differences between itself and LaBonville, and there are many. First, LaBonville submitted her SUP application the first morning she was able to on April 16, 2022; Plaintiff, conversely, did not apply close in time to LaBonville but rather weeks later. Second, Plaintiff's zoning application was incomplete and could not be processed properly. Third, Plaintiff does not own the property on which it sought to build a recreational marihuana establishment. (**Exhibit A**, Application Authorization, 4/28/22). These differences establish Plaintiff and LaBonville were not similarly situated for purposes of an equal protection challenge.

Rather, it is more likely that LaBonville was extremely prepared in applying for the requisite permits because she had been part of the process since the beginning, as noted in numerous news articles attached to Plaintiff's motion. (ECF No. 6-3 PageID.123; ECF No. 6-12 PageID.198 (noting "LaBonville attended the council meeting virtually due to contracting COVID-19.").

Plaintiff further alleges that the Village had no rational basis in selecting LaBonville's application. A "class of one" plaintiff must show a lack of rational basis in one of two ways: either by undercutting "every conceivable basis which might support the government action" or by "demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005). "Animus is defined as ill will, antagonism,

or hostility usually controlled but deep-seated and sometimes virulent. Similarly, ill will is defined as an unfriendly feeling: animosity, hostility." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 466 (6ᵗʰ Cir. 2012) (citation and quotation marks omitted). Plaintiff does not allege any deep-seated hostility, antagonism, or animosity. It only alleges that the Village had a "personal preference" for LaBonville or there were "personal relationships" between LaBonville and the Village (ECF No. 1, PageID.14-15). But positive personal relationships with one candidate do not create animosity or hostility toward another candidate.

Furthermore, Plaintiff has wholly failed to negate the reasons the Village may have had in selecting LaBonville's application. First, for example, Defendant had a rational basis for issuing a SUP to the first applicant who submitted a completed application. Of course, Plaintiff does not dispute LaBonville applied in April while it applied in May. Nonetheless, Plaintiff argues "[t]here is no correlation between how quickly an applicant submits their application and the quality of that application." (ECF No. 6, PageID.87). Even assuming there is no rational justification for wanting applicants to expeditiously apply, Plaintiff's application was deficient well beyond merely being later in time. Additionally, Plaintiff's offer to prove through testimony "that Commission members considered the SUP application to be a 'first come, first serve' process and that they said that Plaintiff's application should be denied because LaBonville's was submitted first" should not

be considered as part of its motion for a preliminary injunction. The Sixth Circuit has observed "that the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Plaintiff's request for injunctive relief cannot rely on offers to prove facts through witness testimony at a later date.

Further, even if the allegation of first-come basis were proved, there is no showing that such an application process is invalid or unequal. All applicants were aware of the ordinance process and received notice of their adoption. Plaintiff admits it had actual knowledge of the ordinance adoption and its effective date. Therefore, Plaintiff had the same ability to apply "first in time" but rather chose to apply not in April but in May.

Second, the Planning Commission noted in its minutes that Plaintiff failed to correctly apply for a SUP several times. Plaintiff failed to address topographical features, size of development features, storm drainage, and parking requirements. Third, LaBonville's ownership of her property and Plaintiff's speculative lease are yet another basis as the Village may have sought an owner of a property be selected for a marihuana establishment permit. See *EJS Properties, LLC*, 698 F3d at 865 ("Unlike EJS, TPS owned the relevant property when it applied for re-zoning"). In its application to the Village, Plaintiff admits he does not own the property.

In all, Plaintiff's equal protection claim is unlikely to succeed because Plaintiff is unable to show it was similarly situated to LaBonville and the Village had rational bases for selecting LaBonville nonetheless.

### 3.      Plaintiff is not likely to succeed on its MRTMA claim.

Plaintiff cannot succeed on its MRTMA claim because it did not submitted an application under Marijuana Ord. 43 and therefore there are no competing applications for competitive review. MRTMA implements a competitive review only when there is more than one applicant for a local marijuana permit and the state cannot issue a state license to every applicant.

In this case, Plaintiff does not allege it applied for a marijuana permit. That Plaintiff should have applied to actually operate a marihuana establishment is plain. In fact, Plaintiff's decision not to apply was contemporaneously and publicly acknowledged in the Midland Daily News:

> However, Sam Pernick of HP Sanford LLC of Royal Oak also put in a bid for a special-use permit. He has a hearing Tuesday before the Sanford Planning Commission. He did not file a license application by the June 17 deadline. (ECF No. 6-12, PageID.201)

The facts undisputedly establish LaBonville was the only applicant. Plaintiff could have applied under Marijuana Ord. 43 indicating the pendency of its SUP application. Instead, Plaintiff made the conscious choice to not apply and

competitive review was never required under the statute. As a result of Plaintiff failing to even apply under MRTMA, Plaintiff's claims are unlikely to succeed.

**B.      Plaintiff Has Not Established It Would Suffer An Irreparable Harm.**

Plaintiff alleges it will suffer an irreparable harm unless this Court grants a preliminary injunction because "it will be permanently prevented from developing its proposed marihuana establishment" due to the fact under the Village's Ordinances only a single marihuana establishment can operate within the MJ-1 District. (ECF No. 6, PageID.93). However, Plaintiff does not have a protected property interest in any "proposed" use of property located in the Village of Sanford. In fact, not only does Plaintiff not have any protected property interest in the permits it desires from the Village, Plaintiff has not alleged any property interest within the Village at all. Plaintiff's complaint merely alleges Plaintiff sought a special use permit for a property located at 2045 N. Meridian Rd. Nowhere in the complaint does Plaintiff allege to have any interest in that property. And, in fact, he has no ownership interest. (**Exhibit A**, Application Authorization, 4/28/22). This begs the question, how could Plaintiff be irreparably harmed when it does not even have a property interest within the Village of Sanford?

In addition, while Plaintiff claims that there is mutual exclusivity between LaBonville and Plaintiff having a marihuana permit and that is enough for an

irreparable harm, the Village would be able to amend its Ordinances to allow additional permits. Or Plaintiff could operate elsewhere. Or Plaintiff could calculate the lost profits from failure to open. Consequently, there are adequate remedies at law precluding a real claim of an irreparable harm.

Plaintiff cannot establish an irreparable harm because it has no protected property interest and there are other remedies at law that would be available if Plaintiff were to succeed.

### C.    The Issuance Of The Injunctive Relief Plaintiff Seeks Would Substantially Injure Others.

Plaintiff's argument the issuance of an injunction would not substantially injure others is untenable. To begin, Plaintiff concedes LaBonville may "feasibly claim" that she would suffer a harm if the injunction was granted because she "would be prevented from developing her property into a marihuana establishment." (ECF No. 6 PageID.93). But then Plaintiff contends such a harm would not be a substantial harm because LaBonville is years away from completing the project and, therefore, she cannot really be harmed. (ECF No. 6 PageID.93). This argument fails to consider the fact LaBonville has likely already consulted with builders, signed contracts, and taken substantial steps towards financing her construction. Whatever harm Plaintiff might suffer, LaBonville would likely suffer to a greater degree. She both owns her property herself and has her permits in hand while actively moving forward.

21

Whatever limited harm might potentially be conjured by Plaintiff is also faced by LaBonville, but with more immediate and concrete consequences.

Unfortunately, this Court is unable to fully understand the harm LaBonville may suffer if a preliminary injunction is issued because she was not joined in this suit from the outset. The Village contends LaBonville is likely to suffer substantial harm if this preliminary injunction is issued.

**D.     The Public Interest Would Be Harmed By The Issuance Of A Preliminary Injunctive In This Case.**

The public has a clear interest in the Village carrying out its plan to allow a recreational marijuana establishment. The residents of the Village of Sanford have expressed their desire for the Sanford Village Council to permit a recreational marijuana establishment since it was first brought up for consideration due to prospective tax revenue and other public benefits. In fact, when the Sanford Village Council proposed opting-in to the state statutory scheme allowing a recreational marihuana establishment in the Village, more than thirty people showed up supporting the action while there was only one person who opposed it. (ECF No. 6-3, PageID.120). However, despite voicing their overwhelming support, the residents have been forced to wait for the Village to open a recreational marijuana establishment because of the cloud of Plaintiff's litigation. Now, Plaintiff seeks to further elongate the process of the Village opening a recreational marihuana

establishment by prohibiting anyone from moving forward. Simply put, the residents should not be forced to wait even longer as the result of an upset applicant claiming it should have been awarded a permit for which it failed to even apply in the first place.

Plaintiff, conversely, argues the public interest would be served because it would "mitigate corruption" and reduce the likelihood of "corruption, bribery, or nepotism" in the future. (ECF No. 6, PageID.94-95). This argument is put forward despite the fact Plaintiff does not allege in its complaint any of those behaviors but rather complains of "inappropriate and biased actions" by the Council due to their personal relationship with LaBonville. (ECF No. 1, PageID.11). In truth, LaBonville was awarded the permits because she quickly submitted comprehensive and complete applications. Her first-hand knowledge of the Village's ordinances gained by vocally attending public meetings may have aided her efforts. But there is nothing corrupt in attending and advocating at public meetings—quite the opposite.

Plaintiff claims the issuance of a preliminary injunction would serve the public interest simply is without merit because the Village is acting in the expressed interest of its citizens. Plaintiff makes startling allegations in violation of the public trust—without evidentiary support—while the actual outcomes are more likely the result of consistent citizen engagement by a local resident. Consequently, this factor weighs strongly in favor of not issuing a preliminary injunction.

### III.    PLAINTIFF'S REQUESTED RELIEF MUST BE DENIED BECAUSE IT DIRECTLY IMPLICATES THE INTERESTS OF A PARTY IT FAILED TO JOIN.

Under Fed. R. Civ. P. Rule 12(b)(7) a person "must be joined" if "the court cannot accord complete relief among existing parties" or failure to join would "impair or impede the person's ability to protect the interest." See Fed. R. Civ. P. Rule 19(a)(1).  Both are true in this case (ECF No. 7, PageID.206-268). Nonetheless, Plaintiff now requests this Court to issue a preliminary injunction that would implicate the interests of LaBonville. Unashamedly, Plaintiff even notes LaBonville may be harmed saying she would be "prevented from developing her property into a marihuana establishment." (ECF No. 6, PageID.93).

Denial of Plaintiff's requested relief is appropriate as other Courts have persuasively dismissed requests for preliminary injunctions for failure to join a necessary party. See *Escamilla v M2 Technology*, 2012 WL 4506081 at *6 (E.D. Texas, July 6, 2012) (holding "[w]ithout all necessary parties joined . . . Plaintiff is unable to show a likelihood of success on the merits . . . [and] the motion for preliminary injunction should be [denied]."); *Brent v. Meeker*, 2017 WL 10811557 at *4 (M.D. Florida, November 7, 2017) (holding "[Plaintiff's failure to join WDME as an indispensable party is itself a sufficient basis for the denial of the requested preliminary injunction."). Furthermore, as a matter of jurisprudence there can be no doubt a request to issue an injunction that directly implicates the interests of a non-

24

party is inappropriate. Consequently, this Court should deny Plaintiff's request for a preliminary injunctive relief for failure to join a necessary party.

## CONCLUSION AND REQUEST FOR RELIEF

The Village prays this honorable Court to dismiss this action, deny Plaintiff's request for a preliminary injunction, and award the Village it's attorney fees and costs in defending this action.

Respectfully submitted,

*Fahey Schultz Burzych Rhodes PLC*
Attorneys for Defendant

Dated:  November 22, 2022

Christopher S. Patterson (P74350)
Matthew A. Kuschel (P76679)
4151 Okemos Road
Okemos, MI 48864
(517) 381-0100

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument, and related documents, if any, was served upon the attorneys of record of all parties by the court's efiling/service system on November 22, 2022. The above statement is true to the best of my knowledge, information and belief.

Respectfully submitted,

Fahey Schultz Burzych Rhodes PLC
Attorneys for Defendant

Christopher S. Patterson (P74350)
Matthew A. Kuschel (P76679)
4151 Okemos Road
Okemos, MI 48864
(517) 381-0100