UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HP SANFORD, LLC,

       Plaintiff,

v.

                                    Civil Case No. 22-12175
                                    Honorable Linda V. Parker

VILLAGE OF SANFORD,

       Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This lawsuit arises from the Village of Sanford's handling of permit applications required to operate Marijuana Establishments within its borders, which were filed by Plaintiff HP Sanford LLC ("Plaintiff") and Village resident Sue LaBonville. The Village of Sanford ("Village") approved LaBonville's applications and denied Plaintiff's. On September 13, 2022, Plaintiff filed a Complaint against the Village asserting: (I) violations of substantive and procedural due process under the Fourteenth Amendment to the United States Constitution; (II) a "class-of-one" claim under the Equal Protection Clause of the Fourteenth Amendment; and (III) a violation of the Michigan Regulation and Taxation of Marihuana Act ("MRTMA"). The matter is presently before the Court on the Village's motion to dismiss pursuant to Federal Rules of Civil Procedure

12(b)(6) and (7). (ECF No. 7.) Also pending before the Court is Plaintiff's motion for preliminary injunction pursuant to Federal Rule of Civil Procedure 65. (ECF No. 6.)

The Village filed a response to Plaintiff's motion. (ECF No. 8.) To date, Plaintiff has not responded to the Village's motion. Thus, technically, the motion to dismiss is unopposed. *See* E.D. Mich. LR 7.1(c)(1) ("A respondent opposing a motion must file a response, including a brief and supporting documents then available."). "Numerous cases have held that where a plaintiff fails to respond to a motion to dismiss, his or her claims are deemed abandoned." *Tranchmontagne v. United States Dep't of Hous. & Urb. Dev.*, No. 20-cv-12842, 2021 WL 2662283, at *6 (E.D. Mich. June 29, 2021) (referencing cases); *see also Williams v. Chase Bank*, No. 15-cv-10565, 2015 WL 4600067, at *4 (E.D. Mich. July 29, 2015). Nevertheless, a district court is required, "at a minimum," to "examine" a Rule 12(b)(6) motion before dismissing a complaint. *Visner v. Mich. State Police*, No. 19-cv-11466, 2020 WL 525367, at *1 (E.D. Mich. Feb. 3, 2020) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

In *Carver*, the Sixth Circuit reasoned:

> . . . a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden. We

2

see no reason why the situation should be different in the context of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

946 F.2d at 455. Accordingly, notwithstanding Plaintiff having "waived opposition to the [Village's]' motion to dismiss[,]" the Court "has undertaken an independent review of the motion[ ] . . . and the sufficiency of Plaintiff's complaint[.]" *Tranchmontagne*, 2021 WL 2662283, at *7.

I.  **Applicable Standards**

   A.  **Rule 12(b)(6) – Failure to State a Claim**

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

3

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Thus, the Village's public records, including any minutes from its meetings, may be considered here.

**B.   Rule 12(b)(7) – Failure to Join a Necessary Party**

A Rule 12(b)(7) motion seeks dismissal for the failure to join an indispensable party under Rule 19. Fed. R. Civ. P. 12(b)(7). When ruling on such a motion, a court "may consider 'the allegations of the complaint and the affidavits and other proofs adduced in contradiction or support thereof.'" *Secura Ins. v. TFGBAR, LLC*, 420 F. Supp. 3d 608, 611 (W.D. Ky. 2019) (quoting *Bolling v. Prospect Funding Holdings, LLC*, No. 1:14-cv-00081, 2015 WL 5680418, at *3 (W.D. Ky. Sept. 25, 2015) (quoting *Estes v. Shell Oil Co.*, 234 F.2d 847, 849 (5th Cir. 1956)).

4

### C.   Rule 65(a) – Preliminary Injunctions

"[A] 'preliminary injunction is an extraordinary remedy reserved only for cases where it is necessary to preserve the status quo.'" *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 535 (6th Cir. 2020) (quoting *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526 (6th Cir. 2017)).  "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 535-36 (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012)).  These factors must be balanced. *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 365-66 (6th Cir. 2022) (citation omitted).  "But where there is no likelihood of *either* success on the merits *or* irreparable harm, an injunction is unwarranted—regardless of the showing on the other factors.  *Id*. (citations omitted).

### II.   Factual Background

The MRTMA, effective December 6, 2018, authorizes recreational Marijuana Establishments within Michigan and establishes a comprehensive licensing and regulation system.  *See* Mich. Comp. Laws §§ 333.27952-.27967 Under the MRTMA, unlimited recreational Marijuana Establishments are

5

permitted within a municipality unless the municipality enacts an ordinance completely prohibiting or limiting the number. *Id*. § 333.27956(1) Where a municipality enacts such an ordinance, it "shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with [the MRTMA] within the municipality." *Id*. § 333.27959(4). If a municipality does not prohibit or restrict the number of establishments, applications for a license are submitted and issued by the State. *Id*. § 333.27959(1).

The Village began drafting ordinances to allow for Marijuana Establishments within its boundaries after LaBonville urged it to do so at a Village Council open meeting. (Compl. ¶ 14, ECF No. 1 at Pg ID 3.) Following debates at open meetings between November 8, 2021 and March 14, 2022, the Village proposed two ordinances allowing for Marijuana Establishments: the Village of Sanford Marijuana Establishment Zoning Ordinance Amendment ("Ordinance 42") and the Village of Sanford Michigan Regulation and Taxation of Marijuana Ordinance ("Ordinance 43"). (*Id*.; *see also* Ordinance 42, ECF No. 1-2; Ordinance 43, ECF No. 1-1.) The Village Council adopted both ordinances on April 6, 2022. (Compl. ¶ 17, ECF No. 1 at Pg ID 4; Ordinance 43, ECF No. 1-1 at Pg ID 19; Ordinance 42, ECF No. 1-2 at Pg ID 40.)

6

Ordinance 42 created the "Marijuana Overlay District ("MJ-1 District") within the Village where marijuana retailers could operate. Ordinance 42 § 11A.3. The MJ-1 District consists of three parcels, commonly known as 2023, 2033, and 2045 North Meridian Road. *Id*. Because these parcels are within 1,000 feet of each other and because Ordinance 42 prohibits more than one Marijuana Establishment within 1,000 feet of another establishment, the Village essentially has limited the number of establishments within its boundaries to one. (Compl. ¶¶ 24, 25, ECF No. 1 at Pg ID 5-6); *see also* Ordinance 42 § 11A.5.C.

An applicant seeking to operate a Marijuana Establishment within the Village must first apply for and obtain a special land use permit. Ordinance 42 § 11A.3. Ordinance 42 sets forth the requirements to apply for a special land use permit, which includes payment of the application fee and submission of seven copies and one electronic copy of a site plan containing information listed in section 14.1.C.2 of the Village's Zoning Ordinance. *Id*. § 15.1.A. Ordinance 42 provides that "[a]pplications for all special use permits shall be considered in the order in which they are received." *Id*. § 15.1.C. Ordinance 42 further provides that applications are to be considered by the Planning Commission at a hearing, only one application may be considered at a time, and when multiple applications are submitted, the first received shall be the first heard. *Id.* § 15.2.A-D. Following

7

the hearing, the Planning Commission must recommend to the Village Council that it will approve, approve with conditions, or deny the special land use permit application. *Id*. § 15.2.E.

If the Village Council approves the application and issues a permit, the holder then may apply for a Permit to operate a Marijuana Establishment. Ordinance 43 § 5.1. However, the Zoning Administrator may only accept applications for Marijuana Establishment Permits after the Village Council sets and publishes the date, time, and place window in which such applications may be made. *Id*. Ordinance 43 lists the information that must be provided in an application, which includes a "Business and Operations Plan" containing specified information and site and interior floor plans. *Id*. § 2; § 2.c.8-9. According to Ordinance 43, "[t]he Village has no obligation to process or approve any incomplete [a]pplication[.]" *Id*. § 5.c. "If more complete applications are submitted for an Establishment than available Permits . . . the Village will decide among competing applications by a competitive review process intended to select applicants who are best suited to operate in compliance with MRTMA and [Ordinance 43] within the Village." *Id*. § 5.e. The ordinance lists several specific factors relevant to the competitive review process. *Id*.

8

Ordinance 42 went into effect on April 16, 2022, while Ordinance 43 became effective on April 29, 2022. (Compl. ¶ 35, ECF No. 1 at Pg ID 7.) On April 16, LaBonville filed an application for a special land use permit for 2023 North Meridian Road—the preliminary step to seek a Permit to operate a Marijuana Establishment there. (*Id*. ¶ 36, Pg ID 7.) On or about May 10, Plaintiff submitted its own application for a special land use permit for 2045 North Meridian Road for the same purpose. (*Id*. ¶ 37, Pg ID 7.) At a May 24 hearing, the Planning Commission considered LaBonville's application and referred it to Council for approval. (*Id*. § 39, Pg ID 7.)

On June 2, the Village (through its counsel) informed Plaintiff (through its counsel) that Plaintiff's application was incomplete because no electronic copy was provided. (*Id*. ¶ 40, Pg ID 8.) The Village indicated that, due to the deficiency, it could not determine whether the application was sufficient to set a public hearing to consider it and that a hearing date could be set only once the identified deficiency was cured. (*Id*.) The Village further indicated that the next scheduled meeting of the Planning Commission was July 12. (*Id*.)

Plaintiff resubmitted its application on June 10. (Compl. ¶ 41, ECF No. 1 at Pg ID 8.) Three days later, the Village Council held a public meeting at which it accepted the Planning Commission's recommendation to issue a special land use

9

permit to LaBonville. (*Id*. ¶¶ 41-43, Pg ID 8.) At the same meeting, the Council also voted to open the window to apply for Marijuana Establishment Permits pursuant to Ordinance 43, with the window closing at 7:00 p.m. on June 17, 2022. (*Id*. ¶ 43, Pg ID 8.)

On June 14, the Village informed Plaintiff that its resubmitted application for a special land use permit omitted several items required in the Zoning Ordinance. (*Id.* ¶ 44, Pg ID 8; *see also* 6/14/22 email, ECF No. 1-5 at Pg ID 57.) Approximately ten days later, Plaintiff obtained a copy of LaBonville's special land use permit application through a Michigan Freedom of Information Act request and "discovered" that it "was significantly less detailed than Plaintiff's [resubmitted] application, and . . . apparently suffered from many of the same supposed deficiencies" the Village identified in Plaintiff's application. (Compl. ¶¶ 45-46, Pg ID 8-9.) On July 11, 2022, the Village Council approved LaBonville's application for a Marijuana Establishment Permit. (*Id.* ¶ 48, Pg ID 9.) The following day, the Planning Commission recommended that Plaintiff's application for a special land use permit be denied, in part because another authorized marijuana retailer was located within 1,000 feet. (*Id.* ¶ 49, Pg ID 9.) The Village Council adopted that recommendation on August 8. (*Id*. ¶ 50, Pg ID 9; *see also* Village Resolution, ECF No. 1-6 at Pg ID 59-60.)

10

Plaintiff avers "[o]n information and belief" that members of the Village Council "intended to give the license to [LaBonville] . . . prior to the application window opening." (*Id.* ¶ 47, Pg ID 9.) Plaintiff further avers that "the Council's decision to deny Plaintiff's applications were [sic] the product of either an irrational personal preference for LaBonville's application or of personal relationships between LaBonville and members of the Planning Commission and/or the Sanford Village Council." (*Id.* ¶ 69, Pg ID 14-15.)

### III. Motion to Dismiss - Applicable Law and Analysis

The Village raises several arguments in support of its motion to dismiss. First, that Plaintiff's Complaint is subject to dismissal because LaBonville is an unnamed indispensable party as Plaintiff seeks to enjoin the Village from awarding permits to her. Next, that Plaintiff's claims fail as a matter of law. Lastly, that the Court should abstain from deciding Plaintiff's claims pursuant to the doctrine set forth in *Burford v. Sun Oil Company*, 319 U.S. 315, 317-18 (1943).

For the reasons discussed below, the Court concludes that Plaintiff fails to state viable federal claims under the Due Process Clause or Equal Protection Clause. Therefore, the Court finds it unnecessary to decide whether dismissal is appropriate for failure to name LaBonville as a party. The Court also finds it unnecessary to address the Village's arguments for *Burford* abstention because it is

11

declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claim pursuant to 28 U.S.C. § 1367(c).

### A. Substantive and Procedural Due Process

The Due Process Clause of the Fourteenth Amendment guarantees that a State shall not deprive a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "Establishing a substantive or procedural due process violation requires first showing 'the existence of a constitutionally-protected property or liberty interest[.]'" *Ogle v. Sevier Cnty. Reg'l Plan. Comm'n*, 838 F. App'x 913, 917 (6th Cir. 2020) (quoting *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992)). "The party claiming the interest must demonstrate a 'legitimate claim of entitlement' to the benefit— that is, 'more than an abstract need or desire for it' and 'more than a unilateral expectation of it.'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "[T]he Constitution does not create property interests: 'They are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000) (quoting *Roth*, 408 U.S. at 577).

12

Plaintiff "can have no protected property interest in the [Village's permitting] procedure itself." *Id.* (citing *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992)). As the Sixth Circuit held in *United of Omaha*, "[a] 'disappointed bidder' to a government contract" does not have a property interest in the government's purchasing guidelines unless the bidder was awarded the contract at some stage of the process or the government's discretion in awarding the contract is restricted. 960 F.2d at 34 (providing, as an example of where a property interest is created, a state law mandating the award of a contract to the "lowest responsible bidder"). There is "no legitimate claim of entitlement to a discretionary decision." *Richardson*, 218 F.3d at 517 (citations omitted). In other words, if the Village has the discretion to grant or deny an application for a special land use permit, even if the application requirements are satisfied, applicants lack a protected interest in the permit. *See Silver*, 966 F.2d at 1036 (internal quotation marks and citations omitted) ("If the Board had the discretion to deny Silver a conditional zoning certificate for a condominium complex even if he complied with certain minimum, mandatory requirements, then Silver would not have a legitimate claim of entitlement or a justifiable expectation in the approval of his plan"); *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202-03 (6th Cir.

13

1995) (finding that the plaintiff had no property interest in a special use permit because the city council had the discretion to grant or deny the permit).

Ordinance 42 confers complete discretion on the Planning Commission and the Village Council to grant or deny special land use permit applications. Ordinance 42 § 15.2.E-F. Such a permit is required to apply for a Marijuana Establishment Permit. Ordinance 43 similarly confers discretion on the Village Council to grant or reject an application to operate such an establishment. Ordinance 43 §§ 5.5.d, 5.5.d. Thus, Plaintiff did not have a constitutionally protected property interest in the special land use permit or permit to operate a marijuana operation in the Village. His substantive and procedural due process claims therefore fail.

B. **Equal Protection**

The Equal Protection Clause precludes the government from "mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Ogle*, 838 F. App'x at 921 (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). Plaintiff's equal protection claim is premised on the third theory, known as a "class-of-one" claim. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286,

14

298 (6th Cir. 2006). To prevail under this theory, Plaintiff must plead sufficient facts to show that the Village treated it differently from similarly situated applicants, which requires that Plaintiff and the other applicants were "similarly situated in all relevant respects." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012) (quoting *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005)). Plaintiff also must show that the Village "had no rational basis" for the disparate treatment. *Id.* (citing *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)). "[A] plaintiff can establish the lack of a rational basis if it either (1) 'negates every conceivable basis which might support the government action or (2) demonstrates that the challenged government action was motivated by animus or ill-will.'" *Id.* (quoting *Warren*, 411 F.3d at 711) (cleaned up).

Plaintiff alleges that it was similarly situated to LaBonville. (Compl. ¶ 67, ECF No. 1 at Pg ID 14.) Bare allegations are insufficient to satisfy the similarly-situated requirement. *See Taylor Acquisitions, LLC v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009). Plaintiff also alleges that LaBonville's "application was significantly less detailed than Plaintiff's application, and . . . *apparently* suffered from *many of* the same supposed deficiencies." (*Id.* ¶ 46, at Pg ID 9 (emphasis added).) Yet asserting that LaBonville's application was less detailed does not establish that it lacked the required details missing from Plaintiff's application.

15

And having some but not all the same deficiencies does not render the applications similarly situated "*in all material* respects." Moreover, the allegations in Plaintiff's Complaint do not "negate[] every conceivable basis which might support the [Village's] action[s]." Instead, they reflect rational basis for those actions.

The application Plaintiff compares to LaBonville's application is the one Plaintiff resubmitted almost two months after LaBonville submitted hers. Plaintiff does not allege that the deficiency in its initial application—the lack of an electronic copy—was the same or substantially similar to any of the alleged deficiencies in LaBonville's application. As Plaintiff relates in its pleading, the Village indicated that this deficiency needed to be cured to be potentially considered at the Planning Commission's next scheduled meeting on July 12.[1] Plaintiff does not suggest that the Village lacked a rational basis for requiring an electronic copy of an application. Nor does Plaintiff suggest that the Village lacked a rational basis for considering applications only once this requirement was

---

[1] Recall that pursuant to Ordinance 42, the Planning Commission could consider only one application for a special land use permit at a time, consideration had to occur at a meeting, and applications were to be considered in the order submitted. Ordinance 42 § 15.2.A-D. Thus, if another complete application had been received by the Village before Plaintiff resubmitted its application, Plaintiff's application may not have been heard at the Planning Commission's next scheduled meeting.

16

met. In fact, the Village Zoning Ordinance provides that the Zoning Administrator will transmit permit applications to the Planning Commission only after ensuring the requirements in the ordinance are satisfied. (*See Village of Sanford, Mich., Zoning Ordinance* § 14.1.C.A; ECF No. 7-8 at Pg ID 264.) Therefore, even if the Village should have treated Plaintiff's deficient resubmitted application the same as LaBonville's application, LaBonville's application for a special land use permit still would have been heard first and Plaintiff would not have potentially received a special land use permit before the Marijuana Establishment Permit application window closed.

The facts alleged in the Complaint also do not plausibly suggest that animus or ill-will motivated the Village's actions.[2] Further, any animus or ill-will must have been directed toward Plaintiff. *See Ziss Bros. Constr. Co. v. City of Indep., Ohio*, 439 F. App'x 467, 479 (6th Cir. 2011) (citing *Turner v. City of Englewood*, 195 F. App'x 346, 357 (6th Cir. 2006); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1224 (6th Cir. 1992)). The Complaint contains no facts suggesting that the Village or its officials harbored any animus or ill-will toward Plaintiff. Instead,

---

[2] "Animus is defined as 'ill will, antagonism, or hostility usually controlled but deep-seated and sometimes virulent.' . . . Similarly, ill will is defined as an "unfriendly feeling: animosity, hostility."" *Loesel v. City of Frankenmuth*, 692 F.3d 452, 466 (6th Cir. 2012) (quoting Webster's Third New International Dictionary, Unabridged (2002)).

Plaintiff's allegations reflect only that the Village's actions resulted from favoritism toward LaBonville. (Compl. ¶¶ 47, 69, ECF No. 1 at Pg ID 9, 14-15 (referring to "either an irrational personal preference for LaBonville's application or of personal relationships between LaBonville and members of the Planning Commission and/or the Sanford Village Council").

For the above reasons, Plaintiff's equal protection claim also fails.

### C.  MRTMA Claim

The Court has supplemental jurisdiction over Plaintiff's MRTMA claim under 28 U.S.C. § 1367. Nevertheless, Congress has granted district courts the discretion to decline to exercise supplemental jurisdiction if *inter alia* all claims over which there is original jurisdiction have been dismissed. 28 U.S.C. § 1367(c). District courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (same). This discretion is circumscribed, however, by considerations of "judicial economy, convenience, fairness, and comity." *Musson Theatrical*, 89 F.3d at 1254 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "After Rule 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims. *Id.* at 1255 (citations omitted) ("When

18

all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing state law claims, or remanding them to state court if the action was removed.").

The Court declines to exercise supplemental jurisdiction over Plaintiff's MRTMA claim because no scheduling order has issued, discovery has not begun, and the Court has yet to invest significant time or resources in the litigation besides addressing the pending Rule 12 motion. Moreover, the question of whether the Village's ordinances violate the MRTMA is best left to the Michigan state courts.

Thus, the Court is dismissing Plaintiff's MRTMA claim without prejudice.

## IV. Conclusion

For the reasons stated, the Court **GRANTS** the Village's motion to dismiss, although Count III of Plaintiff's Complaint is only **DISMISSED WITHOUT PREJUDICE**. The Court fails to address the merits of Plaintiff's MRTMA claim or the Village's argument for *Burford* abstention as it, instead, declines to exercise supplemental jurisdiction over the claim. The Court finds that Plaintiff's due process and equal protection claims fail to state a claim upon which relief can be granted. Therefore, Counts I and II of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**.

19

As the Court finds Plaintiff's due process and equal protection claims subject to dismissal, Plaintiff's motion for injunctive relief based on those claims is **DENIED**. *See Union Home Mortg.*, 31 F.4th at 366. The motion is **DENIED WITHOUT PREJUDICE** to the extent based on Plaintiff's MRTMA claim.

    **SO ORDERED**.

                                                 s/ Linda V. Parker
                                                 LINDA V. PARKER
                                                 U.S. DISTRICT JUDGE

Dated: May 9, 2023